GRACE BANKS, Admrx. of the Estate of Otis Banks, Deceased, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

(No. 55258; 

First District (5th Division)—April 6, 1973.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Harvey N. Levin, Assistant Corporation Counsel, of counsel,) for appellant.

Philip E. Howard, Arthur S. Gomberg, and Sidney Z. Karasik, all of Chicago, for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This cause of action had its origin in a prior suit filed in 1960 for the wrongful death of her husband filed by plaintiff against Floyd Pace, a Chicago police officer. On September 29, 1966, when that case appeared above the black line on the trial call (indicating that it was subject to immediate trial), the city was given written notice of the suit, together with a copy of the complaint which alleged wilful misconduct on the

part of the police officer. The covering letter advised the city that it might be called on to indemnify the defendant, and it was therefore being given an opportunity to furnish him with counsel and a defense to the suit. For that purpose, the case was continued about 10 weeks on the trial call. The city did not file an appearance on behalf of the officer, nor did it furnish him with counsel.* In the course of the trial (which was concluded the next day), plaintiff's complaint was amended, by leave of court, to conform to the proof, by alleging acts of negligence on the part of the officer, and the case went to the jury on the negligence charge. The city did not receive notice of the amended pleading. On December 16, 1966, a judgment based on negligence was entered for plaintiff against Pace in the amount of $30,000. Thereafter, the instant suit was filed against the city, seeking indemnification under the Illinois Municipal Code. (Ill. Rev. Stat. 1967, ch. 24, par. 1—4—5.) After a bench trial, judgment was entered for plaintiff in the amount of $34,803.43 (prior judgment plus interest), and the city now appeals, raising a number of issues which we shall refer to below.

The facts as established by the evidence in the instant case are essentially undisputed. On November 24, 1960, at about 2:00 or 2:30 A.M., an off-duty Chicago police officer, Floyd Pace, was in Sam's Chicken Shack. This establishment housed both a restaurant and a tavern, the two being connected by a corridor about three feet wide and eight to ten feet long. Pace had been drinking a beer in the tavern for about 15 minutes when he got up from the bar and walked to the connecting corridor. He was midway through the corridor when he saw plaintiff's decedent, Otis Banks, approaching him from the opposite direction. He observed that Banks could not support himself, so he backed up against the wall to let him by. As Banks passed Pace in the hallway, he bumped into the officer and said, "Get the fuck out of my way." The officer took out his star and identified himself as a policeman in order to calm down Banks. Then Pace continued walking toward the restaurant while Banks walked in the opposite direction.

Pace was walking past the first booth off the corridor in the restaurant when Banks ran around in front of him and pushed the barrel of a .25-caliber automatic revolver into his lower lip. Pace's mouth began to bleed, he saw a flash, and he thought that Banks had pulled the trigger.

---

* On February 26, 1970, a verified petition of Officer Pace (apparently prepared by an Assistant Corporation Counsel) stated that he was under the impression he would be defended at trial by the Corporation Counsel's Office, and did not learn to the contrary until the day of trial (when an Assistant Corporation Counsel so advised the court).

Banks ran toward the south wall of the restaurant, and Pace called out, "Halt, Police." When Banks reached the wall, he turned around, put both hands on the gun, and pointed it toward the officer. Pace pulled out his own gun and fired it once at Banks. Pace had been carrying his service revolver on his person, but had not exhibited it in the establishment prior to this time. Banks slumped to the floor in a sitting position with his gun in his lap. He raised the gun a second time and aimed directly at Pace. By the motion of Banks' hand, it appeared to Pace that Banks was attempting to pull the trigger. Pace fired a second time, and Banks collapsed on the floor.

The restaurant was filled almost to capacity, and at the time Banks aimed the gun at Pace, the counter, about six feet on Pace's left, was crowded, although there were no tables nearby.

Pace was aware of Police Rule 298 which provided that a police officer is considered to be on duty at all times, although certain hours are allocated to the performance of particular duties, and that he is required to respond immediately to any emergency regardless of when and where it may occur within the corporate boundaries of the City of Chicago. Pace stated that he did not "know truthfully" whether the situation in the restaurant could be categorized as an emergency, but that he had fired in self-defense, and he would say that that was an emergency. In addition, he stated that his obligation as a police officer was to attempt to prevent the commission of crime in his presence, and that the actions of Banks constituted a crime. He carried his gun and his star with him when he was officially off duty, not only for his own protection against people who have animosity against the police, and from people he had arrested and who had subsequently been jailed and released, but also to assist him in making arrests when necessary.

Officer McCann, Director of the Police Academy, testified that a City of Chicago police officer is charged with the enforcement of all state laws and city ordinances. It is his duty to preserve the public peace, protect life and property, and prevent crime. For those times other than the eight-hour shift to which an officer is officially assigned, he is subject to call and still on duty for the purpose of preventing a crime from being committed in his presence. To this end, an officer is required to carry his star and his revolver at all times when he is out in public.

In entering judgment for plaintiff, the trial judge stated that he believed Officer Pace to have been a policeman at the time he encountered Banks, and that whether he fired his gun as a police officer or in his own defense made no difference since he could have been acting in both capacities at the same time.

The four elements essential for recovery of indemnification pursuant

to Ill. Rev. Stat. 1967, ch. 24, par. 1—4—5 are: (1) an injury to a person caused by a member of the police department; (2) while the member is engaged in the performance of his duties as a policeman; (3) without contributory negligence on the part of the injured person; and (4) without wilful misconduct on the part of the policeman. The city contends that the judgment against it on behalf of plaintiff cannot stand because of failure to prove any of the necessary elements of plaintiff's case.

The city concedes in its brief that evidence of a prior judgment against a policeman is ordinarily sufficient to prove elements (1) and (3) above, of the statutory cause of action. The city argues, however, that the only evidence of these elements in this case is to be found in the prior judgment against Pace which is not binding upon the city. And this, because the city did not receive notice of the amended negligence complaint when filed by plaintiff in the course of trial, and it was therefore denied an opportunity to defend the original action on behalf of its policeman.

Before proceeding further with this point, we note that the city stipulated at the trial that a judgment for $30,000 had been entered in favor of plaintiff against Pace on the ground of the latter's negligence, thus having agreed of record that elements (1) and (3) have been established for purposes of this case if that judgment is to be considered conclusive against the city as indemnitor.

■■ This point and its theory are raised for the first time on appeal and come too late. (*Flatow v. Amalgamated Trust & Savings Bank*, 97 Ill.App.2d 357, 361, 240 N.E.2d 161; *Blanchard v. Lewis*, 414 Ill. 515, 521, 112 N.E.2d 167.) During the entire course of the trial, the city did not raise the issue of its not having received notice of the amended complaint. The city did raise a notice issue in its post-trial motion, but there made the point that since it did not receive notice of the filing of the amended complaint, the judgment was void as to Pace and should be vacated, and, in consequence, the judgment in the instant case should be vacated as to the city. The judgment against Pace being valid in any event, the mere stating of this point shows its lack of merit, and the point has been abandoned by the city through its absence from the city's brief in this court.

■■ Furthermore, the city's argument that lack of notice of the filing of the amended complaint in the prior suit excused it from indemnification, was waived in a pre-trial colloquy between the Assistant Corporation Counsel and the court. At that time, the city's attorney specifically stated, "My defense as of right now is only that the defendant [Floyd Pace] was not acting in the line of duty at the time of the shooting * * * That will be our only defense."

■■ Even if the city were considered not to have waived this defense, we would conclude that the prior judgment was, nevertheless, binding upon the city. This is not a common-law action for indemnification, the rules concerning which ordinarily relate to an action by the indemnitee against the indemnitor (not the situation here) and which might be said to require notice to the indemnitor. (See 42 C.J.S. Indemnity § 32a (2) and cases referred to therein which are relied upon by the city in its brief.) Here, the indemnification of a police officer by the city is made available to the injured person through a special liability over, created by the statute, and the only conditions of such liability are clearly and specifically set forth therein. As we have mentioned above, the controlling statute (Ill. Rev. Stat. 1967, ch. 24, par. 1—4—5) sets forth only four necessary elements of the action and does not require that notice be given to the city. This section of the statute is the one which covers the instant case, as it expressly applies to policemen employed by a municipality having a population of 500,000 or over. The very next section of the statute, however, furnishes a stark contrast inasmuch as it sets out the identical four elements for an indemnification action applicable to policemen in municipalities having a population of less than 500,000, but then continues on to provide:

> "*Any policeman,* or any person who, at the time of performing such an act complained of, was a policeman, *who is made a party defendant to any such action shall, within 10 days of service of process upon him, notify the municipality by whom he is or was employed, of the fact that the action has been instituted, and that he has been made a party defendant to the same.* Such notice shall be in writing, and shall be filed in the office of the city attorney or corporation counsel, if there is a city attorney or corporation counsel, and also in the office of the municipal clerk, either by himself, his agent, or attorney. The notice shall state in substance, that such policeman, [naming him], has been served with process and made a party defendant to an action wherein it is claimed that a person has suffered injury to his person or property caused by such policeman; stating the title and number of the case; the court wherein the same is pending; and the date such policeman was served with process in such action, and made a party defendant thereto. *The municipality which is or may be liable to indemnify the policeman shall have the right to intervene in the suit against the policeman, and shall be permitted to appear and defend. The duty of the city to indemnify any such policeman for any judgment recovered against him shall be conditioned upon receiving notice of the filing of any such action in the manner and*

*form hereinabove described."* Ill. Rev. Stat. 1967, ch. 24, par. 1—4—6. (Emphasis added.)

None of the language just quoted appears in the section of the statute applicable to the instant case. Its absence from that section, compared to its inclusion in the next following section, cannot be ignored, especially since both became parts of the Illinois Municipal Code enacted in 1961. For whatever the reason, it was a matter of clear legislative intent to require that notice be given to a municipality of less than 500,000, but not to the City of Chicago.

The prior judgment being conclusive upon the city, however, does not automatically impose liability to indemnify, but binds the city only as to those issues necessarily determined thereby. In the instant case, the first judgment, as stipulated by the city, determined that plaintiff had a cause of action for the killing of Banks by Officer Pace, that Banks was not guilty of contributory negligence, that there were no other defenses to the action, and that damages were sustained in the amount of the judgment for which the defendant Pace is liable to plaintiff. The judgment is not determinative, though, as to two remaining elements of the instant action: whether Pace was acting in the performance of his duties as a policeman at the time, and whether he was guilty of wilful misconduct. See *Karas v. Snell,* 11 Ill.2d 233, 142 N.E.2d 46.

■■ The issue of wilful misconduct, however, was waived by the city's attorney, when, in a discussion before trial seeking to outline and limit the issues, he informed the court that the city's only defense would be that Officer Pace had not been in the performance of his duties at the time in question. The trial judge clarified the city's position by asking, "No issue here as to whether or not the act of the Policeman, Pace, was wilful misconduct * * * right?" and counsel replied, "That's correct, Your Honor." Although the city thus waived the necessity for plaintiff to prove this element of the indemnification action, there was a clear preponderance of proof in the instant case that Officer Pace was, in fact, not guilty of wilful misconduct. Consequently, the only element remaining to be proved by plaintiff was that Officer Pace was in the performance of his duties at the time. This was the only issue presented at trial, and the only issue remaining for us to consider now.

The city contends that Police Rule 298, which provides that a police officer in the City of Chicago is always on duty, cannot be conclusive evidence that all acts of policemen are in the performance of their duties. It argues from this that in this case Pace's off-duty shooting of Banks was an action motivated solely by a desire to save his own life, and was not within the performance of his duties as a police officer.

■■■ We find this position untenable. The nature of a policeman's

job is that he be fit and armed at all times, whether on or off duty, and subject to respond to any call to enforce the laws and preserve the peace. It is true that his being considered "on duty" at all hours of the day or night does not result in all of his acts being deemed to have been taken in the performance of his duties as a police officer. (*Karas v. Snell*, 11 Ill.2d 233, 142 N.E.2d 46.) However, since he is always obligated to attempt to prevent the commission of crime in his presence, any action taken by him toward that end, even in his official off-duty hours, falls within the performance of his duties as a police officer.

■■ In the instant case, Banks, by assaulting Pace with the barrel of his gun and then by aiming it at Pace within the confines of a crowded restaurant, committed one crime and appeared intent upon committing another more serious one, thereby creating an emergency situation. Officer Pace reacted by first calling out the warning, "Halt, Police," and by then firing his own service revolver when Banks appeared about to fire at the officer. In our opinion, these acts of Pace were performed in fulfillment of his obligations as a policeman. The fact that Pace happened also to have shot in self-defense was purely coincidental to his attempt to prevent a crime in the performance of his duties as a police officer. To hold otherwise would require the incongruous finding that a police officer is invested with the authority and duty to defend all lives but his own. We cannot so find.

The judgment of the circuit court is affirmed.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.