MARGARET B. WOLF, Adm'r of the Estate of Paul C. Wolf, Deceased, Plaintiff-Appellee, v. LINDA LIBERIS *et al.*, Defendants-Appellants (Nick Liberis, Defendant).

First District (1st Division)   Nos. 85—3640, 86—0072 cons.

Opinion filed March 9, 1987.

Victor J. Piekarski and Michael Resis, both of Querrey, Harrow, Gulanick, & Kennedy, Ltd., of Chicago, for appellant Linda Liberis.

Judson H. Miner, Acting Corporation Counsel, of Chicago (Mary K. Rochford and John T. Maher, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

Ronald S. Fishman, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This consolidated appeal arises out of an action for damages brought by plaintiff, Margaret Wolf, administrator of the estate of Paul C. Wolf, deceased, against defendants Linda Liberis, the city of Chicago, and Nick L. Liberis, who is not a party to this appeal. The trial court denied separate motions for summary judgment on behalf of Linda Liberis and the city of Chicago. This court granted both leave to appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308).

The plaintiff's decedent, Paul C. Wolf, was killed on May 16, 1979, while driving eastbound on Belmont, as the result of a head-on collision with a car westbound on Belmont owned and operated by Nick L. Liberis, an off-duty Chicago policeman.

The following series of undisputed events preceded the collision. Liberis and his fiancee, Linda Manno (now Linda Liberis), had dinner at a restaurant and had a personal argument. Manno testified that she had several glasses of wine during the meal and several more after Liberis drove her home. At about 2 a.m. she drove to Liberis' apartment, where they resolved their argument. Because Manno had been drinking, Liberis offered to follow her while she drove home. Manno took a wrong turn, drove through a red light, and then lost

control of her vehicle at Central and Belmont and drove her car part-way through a store window. Liberis then parked his car, backed Manno's car out of the window and parked it. He told Manno to stay there while he went to call the police, but did not arrest her.

As Liberis attempted to get back into his own car, he was approached by three men who attempted to restrain or attack him. While he was struggling to get away, Liberis reached for his wallet, where he kept his police badge, and said "I'm on the job." He was not able to get the badge out. In the meantime, Manno had left the scene of the original accident and driven home. Liberis got back into his own car and began to drive away. One of his assailants pulled open his car door and attempted to wrest control of the steering wheel, causing Liberis to lose control and drive head-on into the vehicle driven by plaintiff's decedent.

Liberis was knocked unconscious by the collision and, when he woke up, asked bystanders to call the police and an ambulance. Following the incident, he was discharged from the police department for his misconduct involving the collision. He was also criminally charged and pleaded guilty to a misdemeanor of reckless conduct and sentenced to a year of probation.

The administrator of decedent Wolf's estate filed suit against Nick Liberis, Linda Liberis, and the city of Chicago. Claims against the city were based on the theory that Liberis was acting as an agent of the city at the time of the incident that led to Mr. Wolf's death. Count V of plaintiff's second amended complaint against Linda Liberis alleged that she and Nick Liberis were involved in a tortious concert of action and a joint venture or that Nick Liberis was the agent or a representative of Linda Liberis and that she was, therefore, vicariously liable for his negligent driving. Plaintiff also alleged that Linda Liberis knew or should have known that when she left the scene of the initial accident, it was reasonably foreseeable that Nick Liberis would also leave the scene, follow her, and present a danger to other persons traveling on the highway.

The trial court denied separate motions for summary judgment by Linda Liberis and the city and certified the following question of law:

> "Whether a police officer is acting within the scope of his employment when he is involved in an automobile accident at a time when he is:
>   a) off duty;
>   b) out of uniform; and
>   c) driving his own vehicle
> and where the accident occurs as the result of the following se-

quence of events:

a) the officer had spent the evening with a friend;

b) the officer undertook to follow the friend home in his own car while the friend drove her car;

c) the friend was involved in a one-car accident at approximately 2:00 a.m.;

d) the officer stopped and backed the friend's auto out of the store display window it had broken whereupon the friend drove her auto away;

e) the officer stated to bystanders "I'm on the job" and reached for his wallet;

f) The officer struggled with a bystander who attempted to restrain him;

g) the officer returned to his own car, then attempted to drive away although a second bystander was partially in his car trying to restrain him from leaving the scene of the accident;

h) the officer drove his car, with the second bystander still in the open door of the car, on the wrong side of the street, heading west-bound in the east-bound lanes;

i) the officer collided with an east-bound vehicle;

j) the officer stated in a deposition that he left the scene of the first accident to call the police emergency number 911."

■ These appeals arise out of separate motions for summary judgment. Summary judgment should be granted to a party only if the pleadings, depositions, admissions, and affidavits reveal no genuine issue of material fact and only if the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) Because summary judgment is a drastic measure, it should be granted only when the movant's right to it is free from doubt. (*United Security Insurance Co. v. Mason* (1978), 59 Ill. App. 3d 982, 984, 376 N.E.2d 653.) Cases in which an employer's or principal's liability depends upon whether an individual was acting within the scope of his employment or agency are usually not appropriate to resolve by way of summary judgment. See, *e.g.*, *Wallace v. Smith* (1979), 75 Ill. App. 3d 739, 748, 394 N.E.2d 665; *Marlaire v. Smith* (1978), 62 Ill. App. 3d 995, 997, 379 N.E.2d 763.

■ The general rule in Illinois is that a municipality may be held liable for the tortious acts of police officers in the scope of their employment. (*Andrews v. City of Chicago* (1967), 37 Ill. 2d 309, 311, 226 N.E.2d 597.) Although the general orders of the Chicago police department provide that policemen are "on duty" 24 hours a day, that fact does not necessitate the conclusion that all acts taken by an off-

duty police officer are deemed to be in the performance of his duties as a police officer. *Karas v. Snell* (1957), 11 Ill. 2d 233, 251-52, 142 N.E.2d 46; *Banks v. City of Chicago* (1973), 11 Ill. App. 3d 543, 550, 297 N.E.2d 343, *appeal denied* (1973), 54 Ill. 2d 591.

■ Liability will not be imposed on the municipality when the conduct of the off-duty police officer is so reckless and outrageous that it is deemed to be outside the scope of employment. In that situation, summary judgment is proper. Examples of conduct outside the scope of employment have included a police officer's intentionally threatening to kill and then killing a complainant's son so as to cause the complainant great emotional distress (*Nelson v. Nuccio* (1971), 131 Ill. App. 2d 261, 268 N.E.2d 543, *appeal denied* (1971), 47 Ill. 2d 590); off-duty police officers falsely arresting, falsely imprisoning, and sexually assaulting a complainant, even though their status as off-duty police officers was what enabled them to retain custody of the complainant (*Gambling v. Cornish* (N.D. Ill. 1977), 426 F. Supp. 1153); and an off-duty policeman's breaking down the door of a neighbor's apartment and shooting the occupant in the mistaken belief that he was entering his own apartment and shooting a burglar. *Dzing v. City of Chicago* (1980), 84 Ill. App. 3d 704, 406 N.E.2d 121, *appeal denied* (1980), 81 Ill. 2d 590.

■ Circumstances in the present case similarly warrant a finding that Nick Liberis was acting outside the scope of his employment. While off-duty, Liberis spent the evening with his fiancee, who became intoxicated. He followed her home in his car, and when she drove her car through a store display window, he backed her car out of the window, left the engine running, and allowed her to leave the scene of the accident. When bystanders attempted to restrain Liberis from leaving, he announced "I'm on the job" and reached for his wallet. He broke away from his assailants, returned to his own vehicle and, with one of the assailants hanging onto the steering wheel through the open door of the vehicle, drove down the wrong side of the road into decedent's vehicle. His conduct was entirely in pursuit of personal goals and cannot create liability in the city.

■ The trial court based its denial of summary judgment on the fact that Liberis said he was "on the job" shortly before the accident leading to Wolf's death. In our opinion that remark, standing alone, does not bring his subsequent conduct within the scope of his employment. The law is well settled in Illinois that an agent cannot confer power on himself and his agency or authority cannot be established by showing what he said or did. (*Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 42, 343 N.E.2d 207, *quoting Holbeck v. Illi-*

*nois Bankers Life Assurance Co.* (1943), 318 Ill. App. 296, 304, 47 N.E.2d 721, *appeal denied* (1976), 36 Ill. 2d 552.) Liberis' assertion to bystanders that he was "on the job" does not establish that he was acting within the scope of his employment. The determinative factor is his conduct.

Plaintiff cites *Dragovan v. City of Crest Hill* (1983), 115 Ill. App. 3d 999, 451 N.E.2d 22, *appeal denied* (1983), 96 Ill. 2d 538, in support of her argument that summary judgment was properly denied. In *Dragovan* the chief of police removed a pistol from a police evidence locker and took it home to test it for possible use in the police department arsenal. He left the gun where it was found by his minor son, who discharged the gun, causing serious injury. The appellate court reversed the granting of summary judgment in favor of the city on the ground that there was an issue of fact as to whether, in removing the gun from the evidence locker, the police chief was acting within the scope of his authority. The facts in *Dragovan* are sufficiently dissimilar that we do not find them dispositive here. In our opinion, the removal of the gun from an evidence locker for purposes of testing for the police arsenal did not constitute the kind of outrageous conduct that occurred in the present case.

In further support of her argument that Liberis was acting within the scope of his employment, plaintiff cites a rule of the Chicago police department which defines "on-duty" as "engaging in any activity during specifically assigned hours or rendering any police service during an emergency situation." Plaintiff contends that since Liberis had witnessed a crime, under this rule he became "as a matter of law *** an on-duty policy officer."

■ The rule defining police officers as being "on-duty" at all times serves purposes of internal discipline. We have held that the rule does not support a conclusion that all of the acts of a police officer are therefore within the scope of his employment. (See *Banks v. City of Chicago* (1973), 11 Ill. App. 3d 543, 550, 297 N.E.2d 343, *appeal denied* (1973), 54 Ill. 2d 591.) The record shows that Liberis rendered no police service during the initial accident nor did he act in any way to preserve the well-being of the community. Although Liberis may have witnessed a crime, neither he nor the city can be held liable for his failure to prevent the commission of a crime or his failure to arrest Linda Liberis. See *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 506, 475 N.E.2d 960, *appeal denied* (1985), 106 Ill. 2d 554; *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 176, 446 N.E.2d 1183, *appeal denied* (1983), 96 Ill. 2d 541; *Nieder v. Gacy* (1984), 121 Ill. App. 3d 854, 856, 460

N.E.2d 342; Ill. Rev. Stat. 1985, ch. 85, par. 4—102.

Plaintiff has cited to various unsigned and unsworn statements purporting to show that Liberis announced that he was a police officer. Such statements cannot be considered in reviewing a motion for summary judgment. (See *Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 403, 442 N.E.2d 338; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) More importantly, however, the fact that he may have stated that he was a police officer is immaterial to the question of whether his conduct was "in the line of duty" and therefore within the scope of his employment.

Plaintiff relies on *McDonnell v. City of Chicago* (1981), 102 Ill. App. 3d 578, 430 N.E.2d 169, in which the plaintiff sued to recover for injuries sustained in an altercation with an off-duty police officer who was working as a security guard at the time of the incident. Although the court in *McDonnell* found that there was sufficient evidence to find that the defendant was acting within the scope of his duty as a security guard, it did not address the issue of whether he was acting within the scope of his employment as a police officer.

Plaintiff also relies on *Bauer v. City of Chicago* (1985), 137 Ill. App. 3d 228, 484 N.E.2d 422, in which the court affirmed the granting of summary judgment to the city of Chicago and held that as a matter of law, a police officer who has been suspended cannot be acting within the scope of his employment even if the officer engages in direct police action. *Bauer* does not hold, as plaintiff implies, that any acts taken by an off-duty officer who has not been suspended would be considered to be within the scope of his employment. As stated previously herein, that view was rejected in *Karas v. Snell* (1957), 11 Ill. 2d 233, 252, 142 N.E.2d 46.

The undisputed material facts show that Liberis' conduct was sufficiently reckless and irresponsible to be an unacceptable departure from the scope of his duties as a Chicago police officer. Accordingly, the city of Chicago was entitled to summary judgment in its favor and we answer the certified question in the negative and reverse the order of the circuit court of Cook County denying summary judgment as to the city of Chicago. We remand the cause to the circuit court with directions to grant the city's motion for summary judgment.

■ Defendant Linda Liberis argues that her motion for summary judgment was also improperly denied as there was no genuine issue of fact as to whether or not she was liable for the negligent driving of Nick Liberis. Plaintiff contends that Linda Liberis is vicariously liable to plaintiff's decedent under a concert-of-action theory, specifically (1) conspiracy, or concerted action by agreement, or (2) aiding-abetting,

or concerted action by substantial assistance. Plaintiff also contends that there is an issue of fact as to whether Linda Liberis was the proximate cause of the fatal accident.

The separate elements of civil conspiracy include: (1) an agreement between two or more persons, (2) to participate in an unlawful act, or a lawful act in an unlawful manner, (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement, and (4) the overt act was done pursuant to and in furtherance of the common scheme. See, *e.g., Halberstam v. Welch* (D.C. Cir. 1983), 705 F.2d 472, 477; *Ryan v. Lilly & Co.* (D.S.C. 1981), 514 F. Supp. 1004, 1012.

■■ Aiding-abetting includes the following elements: (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be generally aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation. See, *e.g., Investors Research Corp. v. SEC* (D.C. Cir.) 628 F.2d 168, 178, *cert. denied* (1980), 449 U.S. 919, 66 L. Ed. 2d 146, 101 S. Ct. 317.

■■ Under a theory of concert of action, Linda Liberis, even while intoxicated, could be liable for the driving of Nick Liberis only if she: (1) did a tortious act in concert with Nick Liberis or pursuant to a common design with him, or (2) knew that his conduct breached a duty and gave substantial assistance or encouragement to him to so conduct himself, or (3) gave substantial assistance to him in accomplishing the tortious result and her own conduct, separately considered, breached a duty to plaintiff's decedent. (See Restatement (Second) of Torts sec. 876 (1979).) Neither the allegations of the second amended complaint nor the proofs support a theory of civil conspiracy against Linda Liberis. Nor has plaintiff alleged or proved that Linda Liberis in any way assisted or encouraged Nick Liberis in the negligent operation of his vehicle prior to the collision.

■■ Generally, a person other than the driver is not held liable for damages caused by negligent acts of the driver unless that person is the owner of the vehicle or has the right to control the vehicle. (*Fugate v. Galvin* (1980), 84 Ill. App. 3d 573, 575, 406 N.E.2d 19.) In *Fugate*, the defendant was a passenger in an automobile that struck a pedestrian. This court affirmed the dismissal of the pedestrian's action against the passenger, holding that the passenger could not be liable to the pedestrian even though he knew that the driver was intoxicated. The court reasoned that "[w]hile creating a new duty would assist injured plaintiffs by spreading the loss among a new class of

defendants, \*\*\* society has been satisfied to rely upon the liability of the driver alone to adequately compensate injured plaintiffs." *Fugate v. Galvin* (1980), 84 Ill. App. 3d 573, 577, 406 N.E.2d 19.

■■ It does not follow, as plaintiff contends, that merely by driving to the same destination Nick and Linda were engaged in concert of action. Although Linda Liberis had been drinking prior to the fatal accident, she committed no tortious act against Wolf by leaving Liberis' apartment while intoxicated. Likewise, she committed no tortious act in concert with Nick Liberis merely because he followed her home in his car. The fact that he removed her car from the store window after the initial accident is not evidence that she assisted or encouraged any negligent conduct by Nick Liberis or that the two of them acted in accordance with a common plan to commit a tortious act with both of them knowing of the plan and its purpose.

The plaintiff relies on *Halberstam v. Welch* (D.C. Cir. 1983), 705 F.2d 472, in which that court held that the live-in companion of a burglar was liable for certain acts of the burglar under both civil conspiracy and aider-abettor theories even though she was not present at the time of the burglary. The court noted that the companion knew about the means used to acquire their wealth, that she had been a willing partner for a five-year period, that she had participated in the profits, and that she had performed various services in support of the illicit trade, specifically, acting as banker, bookkeeper, record keeper, and secretary while their home was a storage and processing base for criminal activities.

■■ The court held the companion vicariously liable based on the fact that she knowingly and substantially assisted or agreed to assist the burglar in the performance of his wrongful acts. We find *Halberstam* inapposite here where the record does not support plaintiff's assertion that Linda Liberis either agreed to any tortious act or gave substantial assistance to Nick Liberis in performing any tortious act. At the time of the injury to plaintiff's decedent, Linda Liberis had driven away from the scene of the original incident in her own car. Having left the scene of the accident, there was no way in which she could have substantially assisted or encouraged the negligent conduct of Nick Liberis.

■■ Plaintiff also asserts that proximate cause is a question of fact here, as without the acts of Linda Liberis, the negligent driving and the resultant death to plaintiff's decedent would not have occurred. Testimony in the record leads us to conclude, however, that the head-on collision was not caused by any actions of Linda Liberis in leaving the scene of the accident but by independent subsequent

events. Nick Liberis testified that after the initial accident he told his fiancee to remain in her car and he would locate a telephone and call the police. The head-on collision took place down the street after Linda Liberis had driven away, when one of Nick Liberis' three assailants attempted to wrest control of his steering wheel away from him. In our opinion, while the assailants who interfered with Nick Liberis' control of his vehicle were a material factor in bringing about the fatal accident, Linda Liberis was not.

Having determined that there is no genuine issue of fact as to whether Linda Liberis is vicariously liable for the negligence of Nick Liberis, we also reverse the orders of the trial court denying Linda Liberis summary judgment and her motion to reconsider and remand the cause to that court with directions to grant her motion for summary judgment.

Orders reversed and cause remanded with directions.

QUINLAN, P.J., and CAMPBELL, J. concur.