SECOND DIVISION

January 30, 2001
 

No. 1-99-0280

RACHELL GARNER, individually and as mother and next friend of 

KIMBERLY GARNER,

Plaintiffs-Appellees,

v.

CITY OF CHICAGO, CITY OF CHICAGO

BOARD OF TRUSTEES OF THE POLICEMEN'S

AND FIREMEN'S DEATH BENEFIT FUND,

MATT L. RODRIGUEZ, EDWARD ALTMAN and WHITNEY W. ADDINGTON,

Defendants-Appellants, and

EDWARD M. BURKE,

Defendant.

)))))))))))

)

)))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Dorothy Kinnaird,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

This appeal involves the interpretation of a Chicago Municipal Ordinance which provides benefits to family members of slain police officers.  Plaintiffs-Appellees, Rachell and Kimberly Garner (collectively the "Garners"), are the widow and child of Sergeant Michael Garner ("Decedent").  Decedent, a police officer employed by the City of Chicago, died on July 12, 1997.  Defendants-Appellants are the City of Chicago; the City of Chicago Board of Trustees of the Policemen's and Firemen's Death Benefit Fund (the "Board"); Matt L. Rodriguez, Superintendent of the Chicago Police Department (the "Superintendent"); Edward Altman, Commissioner of the City of Chicago Fire Department; and, Whitney W. Addington, President of the City of Chicago Board of Health.  Also named as a Defendant is Edward M. Burke, a Chicago Alderman and Chairman of the City of Chicago Committee on Finance ("Alderman Burke")(when addressed collectively, Defendants-Appellants will be referred to as the "City").  Alderman Burke, however, retained his own counsel and supports the Garners' position on the question to be decided by this court.   

The trial court granted the Garners' request for declaratory relief and the dispute between the parties on appeal centers around the trial court's interpretation of  section 3--8--040 of the Chicago Municipal Code ("section 3--8--040"). Chicago Municipal Code § 3-8-040 (1999).
  Section 3--8--040, in conjunction with other provisions in the ordinance, provides benefits to family members of police officers or firefighters who are killed while in the line of duty.

Section 3--8--040 of the Chicago Municipal Code states, in pertinent part:

"It shall be the duty of the superintendent of police in the case of a policeman, and of the fire commissioner in the case of a fireman, upon the occurrence of any injury in the performance of duty, to have immediate medical care and hospital treatment given to such injured policeman or fireman, to make or cause to be made a complete and careful investigation of all facts surrounding the
 
occurrence, to obtain the statements of all material witnesses, and to present the said report without delay to the said board of trustees for consideration and action thereon, including the determination as to whether or not such injury arose from violence or other accidental cause and was received by the deceased policeman or fireman while he was in the performance of his duty.  Such report shall show the actual date and hour of the injury, the place of occurrence, the names and addresses of witnesses and the apparent nature and extent of the injury."  Chicago Municipal Code § 3--8--040 (1999).

In their complaint for declaratory judgment, the Garners asserted that Decedent was killed while in the performance of his duty.  The Garners also claimed that under section 3--8--040 the Superintendent is required to conduct an investigation whenever a police officer is killed in the performance of his duty.  They also argued that, under section 3--8--040, the Superintendent must submit the results of the investigation to the Board, which then makes the decision as to whether or not the family members are entitled to benefits.  After the Superintendent refused to issue a report concerning Decedent's death, the Garners filed the instant declaratory judgment action in the circuit court.  The circuit court held that the Superintendent acted in violation of section 3--8--040 by not issuing a report and ordered the Superintendent to conduct an investigation concerning the death of Decedent.  The circuit court also ordered that the results of the Superintendent's investigation  be submitted to the Board.  The record reveals the following facts. 

Decedent died of multiple gunshot wounds on the evening of July 12, 1997.   That evening Decedent had been in a tavern with Cindalyn Meadows ("Meadows"), a woman with whom he was having an affair.  After drinking at the tavern, Decedent and Meadows drove their own automobiles to the 7000 block of South Bell Street, Chicago, Illinois.  After they both parked, Meadows got into Decedent's car. 

Meadows, an eye-witness to the shooting, indicated that while they sat together in Decedent's automobile, another car stalled near Decedent's car.  At one point, one of the men gathered around the stalled car approached Decedent's vehicle.  The man, later identified as Stanley Wofford ("Wofford"), appeared to be gesturing to Decedent like he was asking if Decedent wanted any drugs.    Decedent then indicated that he did not want to communicate with Wofford and "waved him away."  Wofford walked away but, soon thereafter, approached Decedent's automobile again to inquire if Decedent had any jumper cables to start the stalled car.  Decedent responded that he had no jumper cables and Wofford, again, walked away.  

A few minutes later, a black two-door automobile pulled up along side Decedent's car.  According to Meadows, the driver of the black car was Wofford who asked Decedent: "Where do you come from?" and "What do you want?"  Wofford then exited the black vehicle with an automatic handgun in his hand.  In response, Decedent exited his automobile carrying his own handgun.  A physical altercation ensued between Decedent and Wofford.  During the struggle, Decedent was shot multiple times and was pronounced dead on the morning of July, 12, 1997.

After investigating the incident, the Superintendent found that Decedent was not acting in the performance of his duty at the time of death.  Further, the Superintendent concluded, pursuant to section 3--8--040, that he did not have to report the circumstances of Decedent's death to the Board.  The Garners thereafter filed their complaint for declaratory, injunctive and other relief in the circuit court.   The circuit court dismissed the original complaint and allowed the Garners to re-plead their declaratory judgment count.  The Garners filed an amended complaint in which they requested a declaration that section 3--8--040 required the Superintendent to conduct an investigation concerning Decedent's death and to submit the results of that inquiry to the Board.  At the hearing before the circuit court, the Garners orally moved for judgment on the pleadings concerning the above declaration.   The trial court granted judgment on the pleadings and as indicated earlier ordered the Superintendent to conduct an investigation concerning the Decedent's death and to submit a report to the Board for review.  This appeal followed.   

The sole question on appeal concerns the interpretation of section 3--8--040.  Specifically, under the facts of this case, could the Superintendent, in conformity with section 3--8--040, unilaterally determine whether or not the Decedent, a police officer, was injured while in the performance of his duty as opposed to reserving that decision for the Board.  As the  question involves the construction of a municipal ordinance, a question of law, this Court's standard of review is 
de novo
. 
Daley v. American Drug Stores, Inc.
, 294 Ill. App. 3d 1024, 1026, 691 N.E.2d 846 (1998). 

The language at issue in section 3--8--040 has been set out above and will not be repeated here.  We note however that the language of sections 3--8--030 and 3--8--50 are also relevant in construing section 3--8--40.  Section 3--8--030 states, in pertinent part: "A board composed of four members shall constitute a board of trustees authorized to carry out *** provisions dealing with the policemen's *** death benefit fund, and shall be charged with the duty of administering that fund ***."  Chicago Municipal Code § 3--8--030 (1999).
  Section 3--8--050 states, in relevant part:

"No such award or payment shall be made unless satisfactory proof shall have been presented to the board of trustees that death occurred within one year from the date of injury, that such injury arose from violence or other accidental cause, that such injury was received while in the performance of duty, and that such injury was the direct cause of death.  The amount of the award shall be determined by order of court, entered by a court of competent jurisdiction, declaring heirship."  Chicago Municipal Code § 3--8--050 (1999).

The Garners contend that they properly alleged that Decedent was injured while "in the performance of his duty"
 in paragraph 10 of their amended complaint which states:

"On July 12, 1997, Michael Garner [Decedent] was assigned by the Chicago Police Department to work narcotics as a plain clothes officer and was parked in an unmarked City of Chicago police vehicle, at which time he was in possession of his department issued radio, cellular phone, badge, identification Chicago Police baseball cap and was armed with an approved and registered handgun."

The amended complaint additionally provides in Paragraph 19: "Sergeant Garner's [Decedent's] actions in confronting Wofford and attempting to disarm, subdue and arrest him were actions in the performance of his duty as a Chicago police officer."  Moreover
, the Garners claim that because Wofford was carrying a firearm upon a public street, Decedent had a duty to apprehend Wofford under the Illinois Code of Criminal Procedure, and thus, Decedent was injured while in the performance of a police duty when he was killed.  725 ILCS 5/107-16 (West 1998).  Based upon the allegations contained in the amended complaint and the language of the statute, the Garners argue that it is the Board's function to determine whether an officer is fatally injured while in the performance of his duty.

In response, the City claims it was the Superintendent's function to determine whether an injury occurred while in the performance of duty and that it was reasonable for the Superintendent to have determined that Decedent was not injured in the line of duty because: (1) he was drinking in a private car; (2) he was with a woman; and (3) he "wound up in" an altercation that was unrelated to his duties.  The record demonstrates however
 that the Superintendent never explained what factors he relied upon in determining that Decedent was not injured while in the performance of his duty at the time he was killed.  

We make no determination as to whether or not Decedent was actually injured while "in the performance of his duty" at the time of his death as that is not the issue on appeal; we only decide whether the Superintendent had the authority to unilaterally determine that Decedent was not injured while in the performance of his duty.  We conclude that under the statute at issue only the Board could make that determination and that the Garners were entitled to declaratory relief.  

First, the Illinois Code of Criminal Procedure provides the following:

"It is the duty of every *** policeman, when a criminal offense or breach of the peace is committed or attempted in his or her presence, forthwith to apprehend the offender and bring him or her before a judge, to be dealt with according to law; to suppress all riots and unlawful assemblies, and to keep the peace, *** ."  725 ILCS 5/107-16 (West 1998). 

Given the fact that the Garners alleged that Decedent, at the time of this occurrence, was attempting to disarm Wofford who was unlawfully carrying a firearm, we conclude the allegations of the complaint raised a question of whether or not Decedent was injured while "in the performance of duty" at the time of his death.  

Second, Illinois courts have interpreted the language "the performance of duty" very broadly as noted by the comment below:

"The nature of a policeman's job is that he be fit and armed at all times, whether on or off duty, and subject to respond to any call to enforce the laws and preserve the peace. *** [Citation.]  However, since he is always obligated to attempt to prevent the commission of crime in his presence, any action taken by him toward that end, even in his official off-duty hours, falls within the performance of his duties as a police officer."  
Banks v. City of Chicago
, 11 Ill. App. 3d 543, 549-50, 297 N.E.2d 343 (1973).  

We note that this proposition has been qualified to exclude officer's conduct that, "was entirely in pursuit of personal goals."  
Wolf v. Liberis
, 153 Ill. App. 3d 488, 493, 505 N.E.2d 1202 (1987).  In this case, the City argues that Decedent was in the pursuit of personal goals.  We disagree.

In 
Wolf
, the officer was following his intoxicated fiancee home in his own vehicle.  The fiancee was intoxicated to the point where she drove her car through a store-front window.  Upon witnessing this incident, the officer backed his fiancee's auto from the store front and instructed her to remain there while he went to call the police.  The officer then attempted to exit the scene in his own vehicle.  Several onlookers attempted to prevent him from leaving the scene and the officer replied that he was "on duty."  The onlookers grabbed the officer's steering wheel in an attempt to thwart him from leaving.  When this occurred, the officer lost control of his vehicle and ran head-on into another automobile killing the decedent.  
Wolf
, 153 Ill. App. 3d at 492.  

Unlike 
Wolf
, Decedent's conduct in this case cannot be characterized as "entirely in pursuit of personal goals" as the amended complaint alleges that Decedent was attempting to disarm Wofford.  Although there is some dispute between the parties regarding the interpretation of the facts leading to the shooting, there is apparently no dispute that Wofford was brandishing a weapon on a public street at the time of this occurrence. We also recognize that 
Banks
 and 
Wolf
 did not involve the interpretation of the ordinance at issue and instead involved the question of whether liability could be imposed against a municipality for the tortious acts of a police officer in the scope of employment.  Nonetheless, these cases are instructive for understanding the meaning of the phrase in the performance of duty.  For purposes of this case, we conclude that the Garners' amended complaint raised a question of whether Decedent was injured while "in the performance of his duty" at the time of this occurrence because it alleged that a crime was being committed in Decedent's presence, the unlawful use of a weapon and that Decedent was attempting to disarm the offender.  Thus, under 
Banks
 and §5/107-16 Decedent was obligated to attempt to disarm Wofford and "any action taken by him toward that end even in his official off-duty hours, falls within the performance of his duties as a police officer."  
Banks
, 11 Ill. App. 3d at 549-50; 725 ILCS 5/107-16 (West 1998).  

Third, we point out that at the hearing on November 13, 1998, the trial judge interpreted section 3--8--040 by reading sections 3--8--030, 3--8--040 and 3--8--050 together and determined that, where a question is raised concerning a line of duty death, the Board must  be charged with evaluating whether the death occurred within the performance of the officer's duty.  The trial court also concluded that the Superintendent's duty was to complete a report and to submit such report to the Board for a determination as to whether the death occurred while in the performance of duty.

The City claims that the trial court's construction of section 3--8--040 was erroneous because the plain meaning of section 3--8--040 limits the Board's discretion to confer benefits in cases where the Superintendent has first determined that an officer was killed in the performance of duty.  According to the City, section 3--8--040 establishes the Superintendent as a "gatekeeper," where he is charged with unilaterally determining whether or not an officer is killed while in the performance of duty.  We disagree.  

As noted by the Garners:
  "Under the well established rules of statutory construction, the words used in the statute must be given their ordinary and popularly understood meaning, and the relevant language must be read within the context of the entire provision of which it forms an integral part."  
Illinois Wood Energy Partners, L.P. v. County of Cook
, 281 Ill. App. 3d 841, 850, 667 N.E.2d 477 (1995).  In our view, sections 3--8--030, 3--8--040 and 3--8--050 must be read together to determine the intent of the ordinance as a whole.  We note that the second part of section 3--8--040 is particularly instructive, where the ordinance's language states the following:

" It shall be the duty of the superintendent of police ***, *** to present said report without delay to the said board of trustees for consideration and action thereon, including  the determination as to whether or not such injury *** was received by the deceased policeman *** while he was in the performance of his duty *** ."  Chicago Municipal Code § 3--8--040 (1999).

This section clearly delegates the determination of whether or not the injury occurred "in the performance of his duty" to the Board, not the Superintendent. Further, section 3--8--050, the following provision in the ordinance states, in pertinent part: "No such award or payment shall be made unless satisfactory proof shall have been presented to the board of trustees that death occurred *** while in the performance of duty, and that such injury was the direct cause of death *** ."  Chicago Municipal Code § 3--8--050 (1999).
  

In addition, although section 3--8--060 of the ordinance was not considered by the trial court, that section further suggests that the Board, not the Superintendent, makes the determination of whether the officer's death occurred "in the performance of his duty."  Section 3--8--060 states, in relevant part, "Said board of trustees shall submit to the comptroller a report of its findings ***, stating that such [officer's] death was the result of injury received in the performance of duty, in all cases where such is the determination of the board ***."  Chicago Municipal Code § 3--8--060 (1999).  In our view, the language in section 3--8--060 also demonstrates that the intent of the City Council was to grant the Board the power to determine whether or not an officer was fatally injured while in the performance of duty.

Reading the language of the above provisions together, we find that the intent of the City Council was for the Superintendent to conduct an investigation and to submit his report to the Board for review.  Thereafter, only the Board is charged with making the determination as to whether or not the officer was injured "while he was in the performance of his duty."  Although such a reading of the ordinance eliminates the unilateral decision by the Superintendent of a line of duty death it allows for the determination of benefits to be made by the full Board.  Only this interpretation gives meaning to the language of section 3--8--040 that a report be tendered without delay to the Board for "consideration and action thereon, including the determination as to whether or not such injury was received while the officer was in the performance of his duty."

Beyond its own interpretation of section 3--8--040, the City offers no authority in support of its construction.  The City does cite several cases on statutory interpretation: 
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990)("A statute should be construed so that no word or phrase is rendered superfluous or meaningless"); 
Niven v Sequeira
, 109 Ill. 2d 357, 365, 487 N.E.2d 937 (1985) (same language as 
Kraft, Inc.
); 
Snyder v. Olmstead
, 261 Ill. App. 3d 986, 989-90, 634 N.E.2d 756 (1994)("... each word, clause, or sentence of a statute must not be rendered superfluous but must if possible be given some reasonable meaning."); and 
Kaszubowski v. The Board of Education of the City of Chicago
, 248 Ill. App. 3d 451, 457-58, 618 N.E.2d 609 (1993)(same language as 
Snyder
).  However, we do not find these cases persuasive as they represent only general propositions of statutory construction.  In this case, as noted above, we are most persuaded by the proposition that the ordinance's provisions must be read together for purposes of understanding the overall objective of the statute.  

As we interpret the statute, the duties of the Superintendent are: (1) "to have immediate medical care *** given to such injured policeman ***"; (2) "to make or cause a complete and careful investigation of all facts surrounding the occurrence"; (3) "to obtain statements of all material witnesses", and (4) "to present said report without delay to said board of trustees for consideration and action thereon, ***."  Chicago Municipal Code § 3--8--040 (1999).
  Although the City claims that these duties are triggered "upon the occurrence of any injury in the performance of duty," there is no language in this section directing the Superintendent to first determine whether or not such injury was received while in the performance of duty.  This specific charge is delegated only to the Board by the language "including the determination as to whether or not such injury *** was received *** in the performance of his duty."  Chicago Municipal Code § 3--8--040 (1999).

The most compelling argument advanced by the City is that the Garner's interpretation of section 3--8--040 creates a "could have been" standard that is not expressly drawn in the ordinance.  Under the Garner's interpretation, the City claims that the Superintendent's function would be 
to conduct an investigation and to report it to the Board in every case where it is alleged that the death "could have been" received "in the performance of duty."

Further, the City claims that Alderman Burke's interpretation of section 3--8--040 creates another standard that is not expressly contemplated in the ordinance.  According to Alderman Burke, there are three sets of circumstances where every fatal injury or death of a police officer could be appropriately categorized.  First, there are situations where the officer was clearly not "in the performance of duty" such as the off-duty officer who suffers a heart attack in his home.  Second, there are situations where the officer is clearly on-duty such as the on-duty officer who responds to a police dispatch and is killed or injured in a shoot out.  Third, there are situations where "reasonable minds might differ" as to whether the officer's fatal injury occurs "in the performance of duty" such as "when a police officer has chosen to act as a police officer when off-duty and suffers a fatal injury."

The City responds by claiming that there is absolutely no language in section 3--8--040 where a "could have been" in the performance of duty standard or a "reasonable minds might differ" standard has been adopted.  In effect, the City contends that the Garners and Alderman Burke are reading a summary judgment standard into section 3--8--040 that does not exist.  According to the City, section 3--8--040 does not require that, when there is a genuine issue of material fact as to whether or not the officer was killed "in the performance of duty,"  the Board, instead of the Superintendent, is charged with making a determination on the question.  The City warns that an adoption of the Garners' or Alderman Burke's interpretation of section 3--8--040 would lead to considerable litigation concerning officers in "close cases" or cases where "reasonable minds might differ" as to whether or not the officer was "in the performance of duty." 

Although one could argue that the first portion of section 3--8--040 is ambiguous because the language has yielded two different interpretations concerning who has the authority to determine whether the fatal injuries occurred while in the performance of duty, in these instances our supreme court has stated that:   "[T]he language of the statute is normally the best indication of the legislature's intent. [Citation.] Where the meaning of the enactment is unclear from the language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy. [Citation.]" 
Wagner v City of Chicago
, 166 Ill. 2d 144, 149, 651 N.E.2d 1120 (1995).

Section 3--8--010 of the ordinance establishes that the purpose of the enactment is, "for the payment of allowances of money to the family or dependents of any policeman *** of the city of Chicago in case he is killed or fatally injured while in the performance of his duties, ***."  Chicago Municipal Code § 3--8--010 (1999).
  Section 3--8--30 authorizes the Board to carry out the provisions of the death benefit fund and to administer that fund.  Chicago Municipal Code §
 3--8--30 (1999).   To that end, we determine that under the language of the statute the Board, not the Superintendent, is properly charged with making the determination of whether or not an officer was injured "while in the performance of his duty." 

As earlier recognized, the City maintains that the plain language of section 3--8--040 assigns a threshold determination of whether the officer's death or injury occurred  "in the performance of duty" to the Superintendent.  The City also claims that the ordinance must be construed as a whole.  Specifically, it refers to the second part of section 3--8--040 referred to by this court above.  The City's interpretation of the latter half of section 3--8--040 is that the responsibilities of the Board are only triggered in the event the Superintendent first determines the officer died or was injured "in the performance of his duty."  Thus, the City's construction of section 3--8--040 as a whole is that the Superintendent is charged with making a unilateral determination as to whether or not the officer was injured while "in the performance of duty."  Until such determination has been made, the Board has no responsibilities under section 3--8--040.

As stated above, we disagree with the City's construction of section 3--8--040 in this case.  Construing the statute as a whole we have reached the opposite conclusion.  Again, we point out that the language of the statute no where states the Superintendent shall first determine whether or not an officer's death occurred "in the performance of duty."  This determination has been clearly delegated to the Board by the language in the latter part of section 3--8--040 which states, in relevant part, "including the determination as to whether or not such injury *** was received by the deceased policeman *** while he was in the performance of his duty *** ."  Chicago Municipal Code § 3--8--040 (1999).  We conclude 
that the City Council intended that only the Board  make the determination as to whether or not a police officer was injured while "in the performance of his duty."  This interpretation is consistent with elementary principles of statutory construction set forth by controlling case law.  "Generally, in construing municipal ordinances, the same rules are applied as those which govern the construction of statutes. [Citations.]"  
In re Application of the County Collector of Kane County v. American National Bank and Trust Co.
,  132 Ill. 2d 64, 72, 547 N.E.2d 107, (1989).  Our supreme court also stated in 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 91, 606 N.E.2d 1111 (1992), in relevant part:

"The primary rule of statutory interpretation is that a court should ascertain and give effect to the intention of the legislature.  The legislative intent should be sought primarily from the language used in the statute. [Citation.]  The statute should be evaluated as a whole; each provision should be construed in connection with every other section. [Citation.]"  

Deferring to the cases cited above concerning statutory construction, the intent and purpose of section 3--8--040 appears to be carried out by granting the Board the authority to determine whether the officer was or was not injured while in the performance of his duty.

Additionally, if the statute is interpreted as the City suggests, the language which authorizes the Board to determine whether or not the officer's injuries occurred while in the performance of duty is rendered meaningless because the Superintendent would make this determination.  Section 3--8--030 would also be rendered meaningless because it would not be the Board that would carry out the provisions of the ordinance, but essentially the Superintendent.  "Statutes are to be construed in a manner that avoids absurd or unjust results."  
See
 
Croissant v. Joliet Park District
, 141 Ill. 2d 449, 454 566 N.E.2d 248 (1990);  
Stewart v. Industrial Commission
, 115 Ill. 2d 337, 341, 504 N.E.2d 84 (1987).  We conclude that a construction of section 3--8--040 that would effectively eliminate the purpose of the Board would yield such an unjust and absurd result.

The City's argument, that section 3--8--040 does not contain language requiring the Superintendent to tender the Board cases where a police officer "could have been" killed in the performance of his duty, is accurate.  In addition, section 3--8--040 does not contain any language adopting a "reasonable minds might differ" standard.  Yet, we remain with interpreting the language of  section 3--8--040 and are charged with providing it practical meaning. 

We conclude that, in this case, it is reasonable that such a decision should be made by the Board as opposed to a unilateral one made by the Superintendent.  Accordingly, we hold that under section 3--8--040, the Superintendent should have: (1) provided immediate medical care and hospital treatment to the Decedent; (2) made a complete and careful investigation of all facts surrounding the occurrence; (3) obtained statements of all material witnesses; and (4) presented that report without delay to the Board for consideration and action thereon.  Chicago Municipal Code § 3--8--040 (1999).  

 Furthermore, our interpretation of section 3--8--040, granting the Board the authority to decide whether Decedent was or was not "in the performance of his duty" eliminates the stigma of, or any actual partiality, bias or favoritism that could be associated with the Superintendent making a unilateral decision.  Further, the confusion and litigation that the City warns of does not appear to be of considerable magnitude.  In sum, in a situation like this one, where the complaint raises a question of whether or not the officer was fatally injured "in the performance of his duty" based upon factual allegations which include, among other things, that a crime was being committed in the officer's presence, the Superintendent must conduct an investigation and report his findings to the Board.  In our view, the purpose of the ordinance and of the Board, itself, was and is to render decisions conferring death benefits to families and beneficiaries of deceased police officers fatally injured while in performance of police duty.

As an ancillary matter, we reject the arguments made by the Garners and by Alderman Burke that Section 3--8--040 is "akin" to the pension laws in this State.  After reviewing applicable sections of the Pension Code and relevant case law, we conclude that the pension laws are distinguishable from the ordinance in this case.  Given our conclusion on the question to be decided, we find it unnecessary to engage in any discussion comparing and contrasting section 3--8--040 with the Illinois pension laws.

Finally, we offer no opinion as to whether or not Decedent was killed "in the performance of his duty" under section 3--8--040 for the purpose of entitlement to benefits, we have only determined that the Garners were entitled to declaratory relief based upon the allegations contained in their amended complaint.  A decision of whether or not Decedent's injuries arose from violence or other accidental course and whether those injuries were received while Decedent was in the performance of his duty will properly be made by the Board upon tender of the required investigative report by the Superintendent.   

The decision of the trial court is affirmed.

Affirmed. 

GORDON and SOUTH, JJ., concur.