EVELYN HUNT, Special Adm'r of the Estate of Johnie Hunt, Plaintiff-Appellee, v. RICHARD M. DALEY, as Mayor, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—95—1779

Opinion filed February 19, 1997.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Angela Overgaard, Assistant Corporation Counsel, of counsel), for appellants.

Lawrence T. Miller, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

This proceeding involves the 1982 Chicago weapons ordinance, passed by the Chicago city council on March 19, 1982 (see Chicago Municipal Code § 11.1 *et seq.* (1982) (now amended and recodified as Chicago Municipal Code § 8—20—010 *et seq.* (1990)) (set forth in pertinent part in our discussion, below)), rendering certain firearms unregisterable in the City of Chicago. Under that ordinance, several categories of firearms, including handguns, became unregisterable in the City of Chicago. See Chicago Municipal Code § 11.1—3 (1982) (now Chicago Municipal Code § 8—20—050 (1990)). However, pursuant to a grandfathering provision provided in the 1982 ordinance, handgun owners whose handguns were validly registered prior to the effective date of the handgun ban could continue to re-register their handguns. See Chicago Municipal Code § 11.1—3(c)(1) (1982) (now Chicago Municipal Code § 8—20—050(c)(1) (1990)). The 1982 ordinance also required that such re-registration take place every two years. See Chicago Municipal Code § 11.1—18 (1982) (amended and recodified in 1994 to require annual re-registration (see Chicago Municipal Code § 8—20—200(a) (1994))). The failure to re-register firearms every two years after the enactment of the 1982 ordinance rendered such firearms permanently unregisterable, and thereby caused handgun owners to forfeit their right to possess such firearms within the City of Chicago. See Chicago Municipal Code § 11.1—18 (1982) (now Chicago Municipal Code § 8—20—200(c) (1990)).[1]

In September 1993, the plaintiff's decedent, Johnie Hunt (herein-

---

[1]This appeal was initially filed against Johnie Hunt personally as plaintiff-appellee. On November 19, 1996, the date upon which this appeal was orally argued and after all briefs were submitted, the death of Johnie

after Hunt), filed applications with the gun registration section of the Chicago police department to re-register his three handguns. The police department denied Hunt's applications on the ground that he had failed to renew his previous firearm registrations upon their

---

Hunt was suggested and his widow Evelyn Hunt was permitted to substitute as special administrator of his estate. In addition, pursuant to her motion Evelyn Hunt was also permitted to substitute in her individual capacity as heir and successor in the interest of Johnie Hunt and to correspondingly seek relief in her individual capacity. For that purpose she sought to amend the appellee's brief on its face to add a prayer for relief, "[t]hat the City shall reregister the handguns to the heir of Johnie Hunt, Evelyn Hunt, upon her application made within 60 days of the issuance of the mandate of this Appellate Court in this cause." Apparently, this requested relief is designed to track the general pattern provided under the heirship provision of section 8—20—050 of the Chicago weapons ordinance, which states:

"Any person who receives through inheritance any firearm validly registered pursuant to this chapter will be eligible to reregister such firearm within 60 days after obtaining possession or title ***." Chicago Municipal Code § 8—20—050 (1990).

If allowed to stand, that portion of our order of November 19, 1996, would permit the widow of Johnie Hunt to substitute in her individual capacity and to correspondingly seek individual relief directly on appeal under the aforesaid heirship provision of the Chicago weapons ordinance without requiring that she first attempt to initiate a "reregistration" process under that provision at the administrative level. As such, that portion of our order of November 19, 1996, which would allow the widow to substitute and to seek relief in her individual capacity was improvidently granted and is herewith vacated and withdrawn. That portion of our order permitting substitution of Evelyn Hunt in a representative capacity as special administrator of the estate of Johnie Hunt, deceased, shall remain standing.

We note that this appeal is not rendered moot by the death of the plaintiff, Johnie Hunt, by reason of the obvious public interest in considering, apparently for the first time on appeal, the constitutionality of the grandfathering provisions of the 1982 Chicago weapons ordinance. See *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769 (1952) (appeal not rendered moot where issue presented is "of substantial public interest"). Moreover, we further note in that regard that the status of the questioned firearms as part of the estate of Johnie Hunt will predetermine the rights of subsequent heirs to register these weapons pursuant to the heirship provision of section 8—20—050 of the Chicago weapons ordinance set forth above. As is apparent from the face of that provision, the right of an heir to register a given weapon will depend upon its preexisting status, *i.e.*, whether already "validly registered" before passing by inheritance.

expiration every two years, in violation of section 8—20—200(a) of the Chicago weapons ordinance (Chicago Municipal Code § 8—20—200(a) (1990)). Hunt appealed that decision to the Mayor's License Commission of the City of Chicago, which also denied re-registration based upon section 8—20—200(a). Hunt then filed a complaint for administrative review of those orders in the circuit court of Cook County against defendants Richard M. Daley, mayor of the City of Chicago; the Chicago police department; and against the Mayor's License Commission and its director, Winston L. Mardis. The circuit court reversed defendants' denial of Hunt's applications to re-register, on the grounds that section 8—20—200(c) of the weapons ordinance is unconstitutional. Defendants appeal from that order.

The underlying facts are undisputed. As established in his testimony before the Mayor's License Commission, at the time of the enactment of the 1982 weapons ordinance, Hunt owned three handguns which were validly registered. He kept his handguns at home to protect himself and his wife. Up to 1987, Hunt properly re-registered his handguns every two years, as required under the applicable provisions of the 1982 ordinance. On each re-registration application, there was a notice to handgun owners that all firearms registration certificates would expire two years after the date of their issuance, at which time all subject weapons would have to be re-registered. Although there is some dispute as to whether he re-registered his handguns in 1989, the parties agree that after 1989, Hunt did not re-register his handguns again until four years later, when he submitted the September 14, 1993, re-registration applications at issue here. Hunt also testified at the administrative hearing, over the objection of the City of Chicago, that he had been hospitalized repeatedly between 1986 and 1993 for treatment of diabetes, hypertension, prostatitis, and for the amputation of his leg and surgery on his spine.

The Mayor's License Commission rejected Hunt's September 1993 re-registration application. In his complaint for administrative review before the circuit court, Hunt urged as he had before the Mayor's License Commission that the denial of his re-registration applications was an abuse of discretion, was against the manifest weight of the evidence, and was arbitrary and capricious. Hunt then filed a motion for summary judgment, in which for the first time he argued that the denial of his re-registration was unconstitutional. The circuit court denied that motion, stating that summary adjudication was an improper means of disposition on administrative review. The circuit court then proceeded to hearing, pursuant to which it reversed the decision of the Mayor's License Commission on constitutional

grounds, to allow Hunt to re-register his handguns, stating as follows:

> "With the inclusion of the grandfather clause, the handgun ordinance is essentially a compromise position between the interests of the City in eliminating dangerous weapons from the street and the reliance interests and vested property rights of Mr. Hunt. *** By declaring that Mr. Hunt may not renew the registration in spite of his legislatively mandated grandfathered status, simply because he failed to renew his registration within two years of a previous registration, *** the City of Chicago [has attempted] to achieve retroactive application of a prospective ordinance. As such, the actions of the City of Chicago in the case at bar serve no legitimate government function *** [because they] attempt to give with one hand and take away with the other."

Defendants appeal from that order.

## DISCUSSION

On appeal, defendants first contend that the circuit court erred in considering the constitutionality of the re-registration requirement, first raised before it, because the issue was waived insofar as Hunt failed to raise the issue before the Mayor's License Commission. Defendants further contend that, even absent waiver, the circuit court was incorrect in finding section 8—20—200(c) of the weapons ordinance unconstitutional. We reverse for the reasons that follow.

■ We first address the waiver issue. At the outset, we note that the parties agree that, as is the case with administrative agencies generally, the Mayor's License Commission did not have the power to invalidate a statute in the first instance because of any substantive due process violation. See generally 2 Am. Jur. 2d *Administrative Law* § 77, at 99 (1994) ("it is axiomatic that an administrative agency has no power to declare a statute void or otherwise unenforceable"). See also *Yellow Cab Co. v. City of Chicago*, 938 F. Supp. 500 (N.D. Ill. 1996) (administrative agencies lack power to determine the constitutionality of legislation that they must enforce); *Palm Harbor Special Fire Control District v. Kelly*, 516 So. 2d 249 (Fla. 1987) (administrative agency has no power to declare a statute void or unenforceable). Consequently, plaintiff urges that since the Mayor's License Commission could not resolve the issue, there was no reason to raise it there. Defendant, however, responds that notwithstanding that inability to rule on the issue, the issue must be raised during the administrative hearing if for no other reason than that of creating a record that will better enable the reviewing court to address the issue on review.

There appears to be some support for defendants' position in that

regard. *Cf. Caauwe v. Police Pension Board*, 216 Ill. App. 3d 313, 576 N.E.2d 1078 (1991). See also *Miller v. Police Board*, 38 Ill. App. 3d 894, 349 N.E.2d 544 (1976). However, we need not here resolve this question, because the rule is clear that waiver is only an admonition to litigants, not a limitation upon the jurisdiction of a reviewing court. *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 584 N.E.2d 116 (1991); *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 545 N.E.2d 731 (1989). Therefore, the circuit court, which first heard this administrative appeal, was well within the latitude of its discretion to entertain this issue, notwithstanding any waiver contentions. Accordingly, because the circuit court was in any event acting properly within the latitude of its discretion when it considered plaintiff's constitutional challenge, we now consider the merits of that constitutional issue.

Turning to the merits, defendants contend that the circuit court erred in holding section 8—20—200(c) of the 1982 weapons ordinance unconstitutional. In opposition, plaintiff appears to argue that Hunt had vested property rights in his handguns under article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22), which provides individual citizens with a right to bear arms subject to the police power, and that he had a vested right to retain his ownership in those weapons and in his right to use them for personal security purposes. The plaintiff would further urge that by punishing Hunt's failure to re-register his handguns every two years with unregisterability, section 8—20—200(c) of the 1982 ordinance violated his substantive due process rights. Contrary to the circuit court, we find no merit in plaintiff's constitutional contentions.

■ The pertinent provisions of the 1982 ordinance are as follows:
"**8—20—040 Registration of firearms.**
(a) All firearms in the city of Chicago shall be registered in accordance with the provisions of this chapter." Chicago Municipal Code § 8—20—040(a) (1990) (formerly section 11.1—2(a)).
"**8—20—050 Unregisterable firearms.**
No registration certificate shall be issued for any of the following types of firearms:
\* \* \*
(c) Handguns, except:
(1) those validly registered to a current owner in the city of Chicago prior to the effective date of this chapter \*\*\*." Chicago Municipal Code § 8—20—050 (1990) (formerly section 11.1—3).
"**8—20—200(a) Renewal of registration.**
(a) Every registrant must renew his registration certificate annually [every two years under section 11.1—18(a)].
\*\*\*

(c) Failure to comply with the requirement for renewal of registration of a firearm shall cause that firearm to become unregisterable." Chicago Municipal Code §§ 8—20—200(a), (c) (1990) (formerly sections 11.1—3(a), (c)).

As noted above, handguns registered prior to the enactment of the 1982 ordinance were grandfathered under section 8—20—050(c) thereof, but such handguns became unregisterable if owners failed to re-register those firearms every two years. The failure to timely re-register in that regard was penalized with unregisterability under section 8—20—200(c).

The decision of our supreme court in *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 470 N.E.2d 266 (1984), is pivotal. In *Kalodimos*, the plaintiffs challenged the comprehensive handgun ban of Morton Grove, Illinois, under article I, section 22, of the Illinois Constitution, arguing, *inter alia*, that the Morton Grove ordinance was an unconstitutional exercise of the police power. The Morton Grove handgun ban provided that no person could possess a handgun in Morton Grove unless the gun had been rendered permanently inoperative. The *Kalodimos* court held that the right to bear arms under article I, section 22, was not a fundamental right, stating as follows:

"Not every right secured by the State or Federal constitutions is fundamental, however, but only those which 'lie at the heart of the relationship between the individual and a republican form of nationally integrated government' [citation]. While the right to possess firearms for purposes of self-defense may be necessary to protect important personal liberties from encroachment by other individuals, it does not lie at the heart of the relationship between individuals and their government. The right to arms guaranteed by the Federal Constitution has never been thought to be an individual right, as distinguished from a collective right [citation]; moreover, the right to arms secured by the Illinois Constitution, which did not exist prior to 1970, is subject, as we have explained, to substantial infringement in the exercise of the police power even though it operates on the individual level. [Citation.]" *Kalodimos*, 103 Ill. 2d at 509, 470 N.E.2d at 277-78.

The *Kalodimos* court therefore concluded that the relevant test to be applied in their due process and equal protection analysis of the Morton Grove ordinance was one of rational basis, and not of strict scrutiny. In holding that the Morton Grove ordinance met the criteria of the rational basis test, the court noted that the stated purpose of the Morton Grove ordinance, as reflected in its preamble, was to reduce firearm-related deaths and injuries caused by the convenient availability of certain types of firearms. In that regard, the *Kalodimos* court said:

"[A] ban on handguns under the conditions set forth in the ordinance could rationally have been viewed by the village as a way of reducing the frequency of premeditated violent attacks as well as unplanned criminal shootings in the heat of passion or in overreaction to fears of assault, accidental shootings by children or by adults who are unaware that a handgun is loaded, or suicides." *Kalodimos*, 103 Ill. 2d at 510, 470 N.E.2d at 278.

■ Thus, as determined in *Kalodimos*, the test that should control the constitutionality of an ordinance, such as the Chicago weapons ordinance, which seeks to restrict or to eliminate the use of handguns, is the rational basis test. Under this test, we must determine whether such ordinance is rationally related to a legitimate governmental interest. A rational relationship exists between legislation and a legitimate governmental interest if legislation tends to prevent some offense or evil or if it tends to preserve the public health, morals, safety and welfare to some degree. *Town of Normal v. Seven Kegs*, 234 Ill. App. 3d 715, 599 N.E.2d 1384 (1992). If the law bears a reasonable relationship to a proper legislative purpose and is neither arbitrary nor discriminatory, " 'the requirements of due process are met and the courts will not substitute their judgment for that of the legislature.' " *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 454, 389 N.E.2d 529, 533 (1979), quoting *S. Bloom, Inc. v. Mahin*, 61 Ill. 2d 70, 77, 329 N.E.2d 213, 217 (1975). If there is any conceivable basis for finding a rational relationship, the law in question will be upheld. *People v. Windsor*, 242 Ill. App. 3d 1030, 611 N.E.2d 596 (1993). See also *Bricklayers Union Local 21 v. Edgar*, 922 F. Supp. 100 (N.D. Ill. 1996) (where there are plausible reasons for a legislative enactment, a court's inquiry under the rational basis due process test is at an end).

■ The overall purpose of the Chicago weapons ordinance here in question, as reflected in its preamble, is substantially identical to the public policy purposes found in the preamble to the Morton Grove ordinance, referred to above, held to be legitimate in *Kalodimos*. See IV Chicago City Council Proceedings, at 10049 (March 19, 1982) (setting forth preamble to newly enacted Chicago weapons ordinance). See also *Sklar v. Byrne*, 727 F.2d 633, 640 n.9 (7th Cir. 1984) (quoting city council's preamble to 1982 Chicago weapons ordinance and upholding the federal constitutionality of that ordinance). Thus, as was made clear in *Kalodimos*, there can be no question with respect to the Chicago weapons ordinance that its constitutional validity must be held to the standard of the rational basis test and that the criteria for that test are satisfied by the overall purpose of that ordinance. See *Sklar*, 727 F.2d 633 (upholding constitutionality of

1982 Chicago weapons ordinance under United States Constitution). See also *Quilici v. Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982) (upholding Morton Grove handgun ban under United States Constitution).

However, having determined that the overall purpose of the 1982 ordinance satisfies the rational basis test, we must next consider specifically the constitutionality of section 8—20—200(c) thereof, which, as noted, renders unregisterable previously grandfathered handguns which were not re-registered in a timely fashion. See *Kalodimos*, 103 Ill. 2d 483, 470 N.E.2d 266 (rational basis test applied to specific provisions as well as to overall purpose of Morton Grove ordinance). Although the Chicago city council did not explicitly articulate the purposes of section 8—20—200(c), we can conceive of several such purposes. See *Ball v. Village of Streamwood*, 281 Ill. App. 3d 679, 665 N.E.2d 311 (1996) (court may hypothesize reasons for legislation, even if the reasoning advanced did not motivate legislative action); *Alamo Rent A Car, Inc. v. Ryan*, 268 Ill. App. 3d 268, 643 N.E.2d 1345 (1994). As noted by defendants, section 8—20—200(c) may well have been enacted, among other things, (1) to maintain a census of handguns in Chicago, (2) to measure the relationship between handgun possession and violent crime, (3) to catalog handgun ownership to track handgun theft as well as lawful transfers, and (4) to more readily associate a handgun with its owner's current address. These would constitute sufficient purposes under the rational basis test to enforce timely re-registration using the unregisterability penalty of section 8—20—200(c). These reasons are particularly cogent insofar as they help implement the overall purpose of the ordinance, which is to substantially eliminate or reduce the hazards engendered by the possession of handguns.

Plaintiff contends that section 8—20—200(c) is unconstitutional because the legislature could have used alternative means to achieve the goals underlying the enactment of the ordinance, including the imposition of a fine or a provision for the independent notification of each handgun owner prior to the expiration of his handgun registration certificates. We disagree. Under the rational basis test, the existence of a less onerous or more equitable alternative means of securing a governmental interest is not by itself sufficient to render an ordinance unconstitutional. See *Kalodimos*, 103 Ill. 2d at 509, 470 N.E.2d at 277 ("[i]nitially we observe that the search for less onerous alternative means of securing a governmental interest is a hallmark of strict scrutiny, which comes into play only when a fundamental right is invaded"). (As noted previously, the *Kalodimos* court further concluded that the right to bear arms is not a fundamental right.)

See also *Windsor*, 242 Ill. App. 3d 1030, 611 N.E.2d 596. We also note that plaintiff has not demonstrated that the degree of enforcement would be as effective with a fine as it would be with the loss of registration rights. Furthermore, with respect to the contention that more adequate notice should have been provided, it is well settled that all citizens are presumptively charged with knowledge of the law. See *Singh v. Department of Professional Regulation*, 252 Ill. App. 3d 859, 625 N.E.2d 656 (1993). Moreover, in point of fact, notice of the two-year registration requirement was included in each re-registration application that Hunt had filled out since 1982.

Plaintiff, however, contends that section 8—20—200(c) of the ordinance is arbitrary because it did not take into consideration Hunt's need for handguns to protect his family, nor the fact that he suffered serious medical problems during the period in which he failed to re-register. However, these contentions are likewise without merit. Hunt did not show that his need for handguns was any greater than the needs of any other citizens whose handguns were grandfathered subject to the provisions of section 8—20—200(c), or, for that matter, whose handguns were not grandfathered at all. Moreover, as fully discussed above, our supreme court in *Kalodimos* validated the constitutionality of the Morton Grove ordinance that abolished the right to possess working handguns for all of its citizens without grandfathering any. Nor is there anything in the record to establish that Hunt's medical condition prevented him from filing a timely re-registration application. Even if it were shown to be otherwise disabling, Hunt's medical condition would not have prevented him from renewing his registrations by mail. Moreover, the record reflects that notwithstanding his medical condition, Hunt continued to work until his retirement in 1991, during which time he could have satisfied the re-registration requirements of the ordinance.

Plaintiff additionally contends, somewhat obliquely, that section 8—20—200(c) is unconstitutional because it would have operated retrospectively to vitiate Hunt's right to re-register his handguns provided by section 8—20—050(c), the grandfathering provision of the 1982 ordinance. This argument incorrectly characterizes section 8—20—200(c) as having a retroactive effect upon the grandfathering provision. The two sections were adopted simultaneously with the enactment of the 1982 ordinance. See *Valdez v. Zollar*, 281 Ill. App. 3d 329, 665 N.E.2d 560 (1996) (law not retroactive merely because it relates to antecedent events or facts); *Griffin v. City of North Chicago*, 112 Ill. App. 3d 901, 445 N.E.2d 827 (1983). See also *Harraz v. Snyder*, 283 Ill. App. 3d 254, 669 N.E.2d 911 (1996) (law not retroactive unless it impairs vested right acquired under existing laws or attaches a

new disability regarding past transaction); *Klawitter v. Crawford*, 185 Ill. App. 3d 778, 541 N.E.2d 1159 (1989). Here, section 8—20—200(c) does not purport to retroactively modify the grandfathering provision. Having been enacted simultaneously with the grandfathering provision, section 8—20—200(c) merely imposes a continuing condition that must be satisfied for the grandfathering provision to remain in effect.

We also find no merit in plaintiff's reliance upon *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947 (7th Cir. 1979); *Michael Reese Hospital & Medical Center v. United States*, 684 F. Supp. 986 (N.D. Ill. 1988), and *General Telephone Co. v. Johnson*, 103 Ill. 2d 363, 469 N.E.2d 1067 (1984), to support the contention that the ordinance here is unconstitutional because it is inequitable, harsh and burdensome. Those cases are wholly inapposite. In all three cases, the courts found that the statutes in question did not violate any constitutional due process rights. Plaintiff has failed to show how those cases may have any applicability to the instant case.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.[2]

Judgment reversed.

COUSINS, P.J., and HOURIHANE, J., concur.

---

[2]Plaintiff has filed a motion for sanctions against defendants pursuant to Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)), contending that defendants' waiver argument was frivolous. As is manifest from our earlier discussion of that issue, although defendants' position was not meritorious as to that specific point, their contentions with respect to it were neither frivolous nor indicative of bad faith. Moreover, since defendants have prevailed overall in this appeal, it would be all the more inappropriate to impose sanctions because some of the points that they raised were less meritorious than others.