*In re* D.H., a Minor (The People of the State of Illinois, Petitioner, v. Isabella H. *et al.*, Respondents-Appellees (D.H., Minor-Appellant)).

First District (4th Division)  No. 1—96—3977

Opinion filed April 9, 1998.

· Patrick T. Murphy, Lee Ann Lowder, and Kristin K. Woods, all of Office of Public Guardian, of Chicago, for appellant.

Rita A. Fry, Public Defender, of Chicago (Todd Avery Shanker, Assistant Public Defender, of counsel), for the People.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Nancy L. Grauer, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

The office of the public guardian, as attorney and guardian *ad*

*litem* for the minor, D.H., appeals from an order of the circuit court of Cook County affirming a hearing officer's finding that a goal of long-term relative care, rather than adoption, was proper. The public guardian contends the court ignored the plain language of section 1(D)(m) of the Illinois Adoption Act (750 ILCS 50/1(D)(m) (West 1994)) when it measured the parents' progress from the time of the dispositional hearing rather than from the adjudicatory hearing. The public guardian also contends the court's decision was against the manifest weight of the evidence and contrary to the best interest of the child.

The State of Illinois, designating itself as an appellee in this matter, has filed a brief arguing that progress should be measured from the adjudicatory hearing rather than the dispositional hearing, but the State takes no position regarding the propriety of the court's decision entering a goal of long-term care.

The respondents contend that whether the 12-month period runs from the adjudicatory hearing or the dispositional hearing is irrelevant to this proceeding since that section is used to determine unfitness when a petition to terminate parental rights has been filed. None was filed in this case. We affirm the trial court.

FACTS

The respondents are the biological parents of D.H., born February 20, 1994. On December 4, 1994, the Cook County State's Attorney filed a petition for adjudication of wardship alleging that D.H. was neglected due to a lack of care pursuant to section 2—3(1)(a) of the Juvenile Court Act of 1987. 705 ILCS 405/2—3(1)(a) (West 1996). The petition alleged that the parents or another person responsible for the child's care left the child alone in a situation that required judgment or actions that were beyond the child's level of maturity, physical condition, and/or mental abilities.

On December 6, 1994, the court entered a temporary custody order, removing D.H. from the parents' home and placing him in the temporary custody of the Illinois Department of Children and Family Services (hereinafter DCFS). The court found probable cause existed to believe D.H. was neglected, and found an immediate and urgent necessity to remove him from the parents' custody, based upon the stipulation that his mother left D.H. and his two-year-old sister home alone when D.H. was five months old.

On April 26, 1995, an adjudicatory hearing was held and an order was entered finding that D.H. was neglected because of lack of care. The case was continued to June 19, 1995, for a dispositional hearing. The court ordered DCFS to tender a written supplemental

social investigation to the parties two weeks prior to that date. On June 19, 1995, although the social worker was in court, no written report had been prepared, and the case was continued to August 28, 1995, for a dispositional hearing. On August 28, 1995, the social investigation report had not been prepared, and the court reordered it. The court also entered an order for DCFS to refer the child's mother to parenting classes, and the case was continued to October 23, 1995.

The case was again set for a dispositional hearing, but Isabella H. made a motion for a continuance, stating that her parenting classes were beginning that day. The court granted the motion and continued the case to January 17, 1996. The court also ordered a drug and alcohol assessment.

The court held a dispositional hearing on January 17, 1996, and made the following finding: that the parents were unable for some reason other than financial circumstances alone to care for, protect, train, or discipline the child.

The case was set for a permanency planning hearing on March 21, 1996, but was continued because DCFS had not entered the service plan 14 days in advance, as required by statute. Twice thereafter the case was continued because the attorney for Isabella H. was unable to attend.

On August 5, 1996, a permanency planning hearing pursuant to sections 2—28 and 2—28.1 of the Juvenile Court Act (705 ILCS 405/ 2—28, 2—28.1 (West 1996)) was held before a hearing officer. There is no official report of that proceeding included in the record.

After the proceeding, the hearing officer accepted the DCFS permanency goal of relative care and made the following findings: (1) the child was 2½ years old; (2) he was placed with his paternal grandmother, who was interested in adoption; (3) Jaramel H. is not involved in services, but is visiting his son; and (4) Isabella H. completed a substance abuse evaluation and a psychological evaluation. The evaluations recommended individual counseling and substance abuse counseling. The hearing report also noted that Isabella H. had two urine tests, one positive for cocaine, and she needed to obtain verification of completion of parenting classes and to maintain clean urine tests. The cause was continued to January 23, 1997, for another permanency hearing.

On September 4, 1996, the public guardian filed an objection to the hearing officer's recommendation of long-term care as a permanency goal. Attached to the objection were exhibits that purportedly had been admitted at the permanency planning hearing. The exhibits contained the parents' substance abuse evaluations with a laboratory

report dated June 28, 1996, indicating that Jaramel H. exhibited a positive toxicology for marijuana, and a laboratory report dated June 24, 1996, which indicated Isabella H. tested positive for marijuana. Other portions of the exhibits contained Isabella H.'s substance abuse evaluation dated May 3, 1996, which indicated that she had a positive toxicology for marijuana, and her psychological evaluation. However, the report of that proceeding is not part of the record on appeal.

■ Although the public guardian's objection asked that adoption should be the permanency goal[1] and the parents' rights should be terminated, no explicit notice was given to the parents that their rights might be terminated and no showing of unfitness by "clear and convincing evidence" was made. Before the State may terminate parental rights, those due process considerations must be met, as well as the filing of a petition explicitly alleging parental unfitness under sections 2—13 and 2—29(2). *In re P.F.*, 265 Ill. App. 3d 1092, 1100 (1994).

■ On October 18, 1996, the court heard arguments on the goal. At the hearing, an issue arose as to whether the 12-month period began to run from the adjudication of neglect or from the dispositional hearing on January 17, 1996. The Illinois Adoption Act, as a ground for finding parental unfitness, includes:

"[f]ailure by a parent to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within 12 months after an adjudication of neglected minor *** under the Juvenile Court Act or the Juvenile Court Act of 1987." 750 ILCS 50/1(D)(m) (West 1994).

The trial court first noted that there was no case specifically addressing the issue of when the 12-month period began to run. The court then commented on the procedural history of the case, including the facts the case was continued several times and the court did not order parenting classes or drug and alcohol assessments until October 23, 1995. The court stated that at the January 17, 1996, dispositional hearing it was indicated that a drug and alcohol assessment was needed and that parenting classes would be completed. The case was set for permanency planning to March 21, 1996.

The court then said that when the permanency planning hearing

---

[1]Under the version of the statute in effect at the time of this permanency hearing, it appears that adoption was an option as a permanence goal. Under the new statute, adoption cannot be set as a permanence goal until after termination of parental rights. See Pub. Act 90—28, eff. January 1, 1998 (amending 705 ILCS 405/2—28 (West 1996)).

was finally held, Isabella H. had completed a substance abuse evaluation and a psychiatric evaluation which recommended counseling and educational classes. Additionally, she had two urine samples which tested positive for marijuana. Also, she had been told to verify completion of parenting classes and to maintain clean urine. The court said:

> "Therefore, the Court at this time, at least in this case, based upon the fact that it was not the mother's fault that this matter has to be continued almost six months for a dispositional hearing, based upon the fact the Court could not obtain a written supplemental social that I am not going to hold that period of time against the mother considering it was not until my specific findings on January 17, 1996, that she needed a drug-and-alcohol assessment and that drug rehab was necessary. I will also add that I did not order a psychological evaluation. That was done apparently as part of the service plan.

> Based upon that finding, the reasonable progress or reasonable efforts are going to be looked at from January 17th. I find it has not been 12 months. The mother has made some progress. Certainly not enough as of yet and she does [not have] much time left before her rights can be terminated. The Court at this time is not going to find that the goal set by DCFS and [which] is recommended by the hearing officer is not in the best interests of the minor and is not [sic] an abuse of discretion."

## DECISION

The public guardian contends the court erred in considering the 12-month period to run from the date of the dispositional hearing. The public guardian also contends the parents failed to raise the issue of whether section 1(D)(m) of the Adoption Act even applies to permanency planning hearings and have waived this issue.

■ Although the parents did not argue this point before the trial court, "[t]he waiver rule is an admonition to litigants and not a limitation upon the jurisdiction of a reviewing court." *Barnett v. Zion Park District*, 171 Ill. 2d 378, 389 (1996); *Hunt v. Daley*, 286 Ill. App. 3d 766, 771 (1997). Whether the time limits set in the Adoption Act apply to permanency planning hearings under the Juvenile Court Act is an issue of statutory construction we choose to address.

No case has specifically determined if the Adoption Act's 12-month period runs from the date of adjudication of neglect or from the date of the dispositional hearing. However, we do not believe the answer makes any difference in this case.

■ The public guardian has cited no case where section 1(D)(m)

has been applied at a permanency hearing.[2] While the Adoption Act does provide for its construction "in concert with the Juvenile Court Act" (750 ILCS 50/2.1 (West 1994)), section 1(D)(m) is not cross-referenced in any of the provisions laying out the guidelines for permanency hearings (705 ILCS 405/2—28, 2—28.1 (West 1996)). We must assume that if the 12-month period specified in the Adoption Act applied to the Juvenile Court Act, the General Assembly would have said so.

Furthermore, section 2—28(2)(iv) states that at the permanency hearing, the court, or hearing officer, is to "review *** whether reasonable efforts have been made by *all* the parties to the service plan to achieve the goal." (Emphasis added.) 705 ILCS 405/2—28(2)(iv) (West 1996). This section prescribes no time limitation on reasonable efforts, and all the efforts by all the parties are to be considered. We believe the discretion provided at a dispositional hearing is considerably wider than the public guardian contends. The remaining question is whether the trial court erred in finding that the permanency goal was not an abuse of discretion.

At the hearing held before the court on the public guardian's objections, the court noted there was not any type of "service plan" until October 23, 1995, and it was not until January 17, 1996, that a drug and alcohol assessment was proposed and that parenting classes would be completed. The court found that since many of the continuances and failures were the fault of the State, the parents were making progress. The goal of long-term care was not an abuse of discretion. While the public guardian contends this finding was against the manifest weight of the evidence, we are unable to examine the evidence because we do not have a transcript of the permanency hearing. Based on the findings at the permanency hearing that can be

---

[2]The parents contend that a finding under section 1(D)(m) of the Adoption Act is relevant only when there is a petition for termination of parental rights. This has some support under Public Act 90—28 (Pub. Act 90—28, art. X, § 10—20(4)(b), eff. January 1, 1998 (amending 705 ILCS 405/2—28(2) (West 1996))), which states:

> "(b) the State's Attorney may file a motion to terminate parental rights of any parent who has failed to make reasonable efforts to correct the conditions which led to the removal of the child or reasonable progress toward the return of the child, as defined in subdivision (D)(m) of Section 1 of the Adoption Act *or for whom any other unfitness ground for terminating parental rights as defined in subdivision (D) of Section 1 of the Adoption Act exists.*" (Emphasis added.)

gleaned from the record, we cannot say that the court manifestly erred.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CERDA, P.J., and SOUTH, J., concur.