THE CITY OF CHICAGO, Plaintiff-Appellant, v. DANE TAYLOR, Defendant-Appellee.

First District (3rd Division)    No. 1—01—0414

Opinion filed June 28, 2002.—Rehearing denied August 16, 2002.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna R. Solomon, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellant.

Stephen J. Nagy, of Glenview, for appellee.

PRESIDING JUSTICE HALL delivered the opinion of the court:

On October 1, 2000, Dane Taylor was arrested at his home at 4153 N. Ashland, Chicago, Illinois, and charged with unlawful discharge of a firearm, possession of a firearm without a Firearm Owners Identification Card (FOID card), and three counts of possession of an unregistered firearm. During the arrest, the Chicago police recovered three unregistered firearms, which included a Valmet assault rifle 308, a North American 1¹/₂-inch short barrel stainless revolver, and a Parker Bros. shotgun.

On November 29, 2000, Dane Taylor pled guilty to three charges and was subsequently sentenced to one year of supervision, concurrent on all charges, and a $300 fine. The City of Chicago (the City) then moved to confiscate and destroy the seized firearms. Dane Taylor objected.

On December 14, 2000, John Taylor, Dane Taylor's father, petitioned for return of the seized Parker Bros. shotgun. The petition stated that: John Taylor, a resident of Glencoe, Illinois, was the owner of the shotgun and possessed a valid State firearm identification card; the shotgun was a family heirloom, having sentimental value; the shotgun was regarded as a valuable antique, because it was made by Parker Brothers, before Parker Brothers merged with Remington around 1930; and John Taylor had loaned the shotgun to Dane Taylor for a future hunting trip.

On December 14, 2000, following a hearing on John Taylor's petition for release of the shotgun, the trial court granted the petition and ordered the shotgun returned to John Taylor. On January 24, 2001, the circuit court denied the City's motion to reconsider. However, the court's order was stayed pending appeal. The City filed its timely notice of appeal on February 2, 2001. On appeal, the City contends that the trial court erred by ordering the City to release the unregistered shotgun to John Taylor. For the reasons that follow, we reverse the trial court's order directing the City to release the shotgun.

## ANALYSIS

■ The construction of a municipal ordinance is a question of law, subject to *de novo* review. *Garner v. City of Chicago*, 319 Ill. App. 3d 255, 744 N.E.2d 867 (2001).

■ In the instant case, the City asserts that the trial court erred

by ordering it to release the unregistered shotgun to John Taylor, where section 8—20—040 of the Chicago Municipal Code (Chicago Municipal Code § 8—20—040 (1999)) forbids an individual from possessing an unregistered firearm within the City of Chicago and where section 8—20—220 of the Chicago Municipal Code provides that a confiscated, unregistered firearm must be destroyed when it is no longer needed as evidence (Chicago Municipal Code § 8—20—220 (1999)).

Section 8—20—040 of the Chicago Municipal Code, entitled "Registration of firearms," provides in relevant part:

"(a) All firearms in the [C]ity of Chicago shall be registered in accordance with the provisions of this chapter. It shall be the duty of a person owning or possessing a firearm to cause such firearm to be registered. No person shall within the [C]ity of Chicago, possess, harbor, have under his control, transfer, offer for sale, sell, give, deliver, or accept any firearm unless such person is the holder of a valid registration certificate for such firearm." Chicago Municipal Code § 8—20—040 (1999).

Section 8—20—220 of the Chicago Municipal Code, entitled "Destruction of weapons confiscated," provides:

"Whenever any firearm or ammunition is surrendered or confiscated pursuant to the terms of this chapter, the superintendent shall ascertain whether such firearm or ammunition is needed as evidence in any matter.

If such firearm or ammunition is not required for evidence it shall be destroyed at the direction of the superintendent. A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained." Chicago Municipal Code § 8—20—220 (1999).

The City contends that the shotgun at issue was not registered in the City of Chicago as required by section 8—20—040 of the Chicago Municipal Code, and therefore it was subject to confiscation and mandatory destruction under section 8—20—220 of the Chicago Municipal Code.

In response, John Taylor[1] contends that: (1) the City's gun control ordinance is an improper exercise of home rule authority; (2) the ordinance violates his right to bear arms under article I, section 22, of the 1970 Illinois Constitution because it applies to all firearms; (3) the ordinance denies him due process; (4) the ordinance adversely affects

---

[1]Even though John Taylor is not named in the caption, he is a party in interest, since he is the owner of the shotgun at issue and the trial court's order directing the City to release the firearm was written in response to his petition.

a nonresident hunter's ability to travel through Chicago with hunting firearms that have not been registered with the City of Chicago; (5) the ordinance's definition of antique firearms is arbitrary and capricious; and (6) the City fails to cite any authority regarding the amount of time an individual can possess an unregistered firearm in the City of Chicago before it has to be registered. We must reject all of John Taylor's contentions.

## I. Validity of the City's Ordinance Under the Home Rule Power

■ In 1970, Illinois adopted a provision for home rule power in its constitution.[2] Home rule government is based on the premise that local governments are in the best position to assess the needs and desires of their communities and, therefore, can most effectively enact legislation addressing local concerns. *Carlson v. Briceland*, 61 Ill. App. 3d 247, 377 N.E.2d 1138 (1978); *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 470 N.E.2d 266 (1984) (stating that home rule is "predicated on the assumption that problems in which local governments have a legitimate and substantial interest should be open to local solution and reasonable experimentation to meet local needs").

Under the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, § 6), effective July 1, 1971, local units of government became, or were given the power to become, home rule units.[3] The basic grant of home rule power is contained in article VII, section 6(a), of the 1970 Illinois Constitution, which provides in relevant part:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare[.]" Ill. Const. 1970, art. VII, § 6(a).

Home rule units are granted the right to exercise such powers concurrently with the state. Article VII, section 6(i), of the 1970 Illinois Constitution provides:

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the

---

[2]Ill. Const. 1970, art. VII, § 6. The constitution was ratified in a special election held December 15, 1970. S. Gove, Illinois Commission on Intergovernmental Cooperation, Constitutional Developments in Illinois 8 (1987).

[3]Article VII, section 6(a), provides in relevant part:

"A County which has a chief executive officer elected by the electors of the county and any municipality which has a population of more than 25,000 are home rule units. Other municipalities may elect by referendum to become home rule units." Ill. Const. 1970, art. VII, § 6(a).

concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i).

In addition, article VII, section 6(m), provides:
"Powers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

Home rule units have expansive powers to govern as they deem proper, including the authority to impose greater restrictions on particular rights than those imposed by the state. See, *e.g.*, *Peters v. City of Springfield*, 57 Ill. 2d 142, 311 N.E.2d 107 (1974) (upholding ordinance providing mandatory retirement age for policemen and firemen lower than that specified by the state statute); *City of De Kalb v. White*, 227 Ill. App. 3d 328, 591 N.E.2d 522 (1992) (upholding ordinance imposing fine in excess of that authorized for the same offense under state criminal law). The only limits on a home rule unit's autonomy are those imposed by the Illinois Constitution or by the Illinois General Assembly exercising its authority to preempt home rule in specific instances.[4]

■ In *City of Carbondale v. Yehling*, 96 Ill. 2d 495, 451 N.E.2d 837 (1983), the Illinois Supreme Court discussed the two-part test to be used in determining the validity of an ordinance passed by a home rule unit. First, the subject matter of the ordinance must pertain to the city's government and affairs. If pertinent, it must then be determined whether the ordinance is preempted by state regulation of the subject matter.

In *Kalodimos*, a pivotal decision regarding the validity of an ordinance regulating handguns, the Illinois Supreme Court held that a village ordinance banning the possession of operable handguns, with certain exceptions, was a permissible exercise of the village's home rule powers and did not violate article VII, section 6, of the 1970 Illinois Constitution. *Kalodimos*, 103 Ill. 2d at 500-08. The court noted that delegates to the 1970 Illinois constitutional convention acknowledged that weapons control was a suitable field for local regulation pursuant to home rule authority, and the court went on to find that the ordinance at issue in its case was valid since it addressed the village's local interest in reducing crime within its boundaries, minimizing the effects of domestic violence, and reducing handgun accidents involving children. *Kalodimos*, 103 Ill. 2d at 503-04. The court also

---

[4]Under article VII, section 6(g), the legislature may, by a three-fifths majority vote, deny or limit home rule powers; and under section 6(h), the legislature may "provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, §§ 6(g), (h).

determined that state law regulating handguns did not preempt the village's gun control law, even if the village's law was more stringent than the state law. *Kalodimos*, 103 Ill. 2d at 506.

█ In the instant case, as in *Kalodimos*, we hold that the City's gun control ordinance is a permissible exercise of the City's home rule powers and does not violate article VII, section 6, of the 1970 Illinois Constitution, since the ordinance clearly pertains to the City's interest in reducing firearm-related deaths and injuries,[5] and the ordinance has not been shown to have been preempted by any state regulation. See Ill. Const. 1970, art. VII, § 6(i) (requiring the legislature to "specifically declare the State's exercise to be exclusive").

## II. Constitutional Right to Bear Arms

█ Article I, section 22, of the 1970 Illinois Constitution provides:

"Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22.

In *Kalodimos*, the Illinois Supreme Court held that a village ordinance banning the possession of operable handguns did not violate article I, section 22, of the constitution, concluding that a ban on discrete categories of firearms, such as handguns, was a constitutionally permissible exercise of police power. *Kalodimos*, 103 Ill. 2d at 511. The court reasoned that the exercise of police power included the passage of laws restraining or prohibiting anything harmful to the welfare of the people. *Kalodimos*, 103 Ill. 2d at 496. The court noted that a report by the framers of section 22 explicitly recognized that the possession and use of firearms was subject to an extraordinary degree of control under the police power, because firearms posed such an extraordinary threat to the safety of society. *Kalodimos*, 103 Ill. 2d at 491-92.

John Taylor contends that unlike the ban on handguns at issue in *Kalodimos*, the City's gun control ordinance infringes on his right to bear arms under article I, section 22, of the constitution because the City's ordinance applies to all firearms. John Taylor's contention must be rejected.

█ Similar to the ordinance at issue in *Kalodimos*, the City's ordinance (Chicago Municipal Code § 8—20—050 (1999)) bans certain discrete categories of firearms such as sawed-off shotguns, machine

---

[5]The Chicago firearms registration ordinance's preamble establishes that the ordinance is an attempt to limit the proliferation and convenient availability of firearms, thereby promoting the health and safety of the citizens by reducing firearm-related deaths and injuries. See *Kromeich v. City of Chicago*, 258 Ill. App. 3d 606, 630 N.E.2d 913 (1994).

guns, short-barreled rifles, and certain assault weapons by making these firearms unregisterable. However, the ordinance does not ban all firearms. Section 8—20—040 of the Chicago Municipal Code requires that all firearms be registered, but it allows an individual to legally possess a registerable firearm once that firearm has been properly registered. The ordinance's registration requirement does not prevent a person from bearing arms. In fact, the shotgun at issue in this case could have been lawfully possessed within the City of Chicago if it had been registered under section 8—20—040 of the Chicago Municipal Code. For these reasons, we must reject John Taylor's argument that the City's gun control ordinance violates his right to bear arms under article I, section 22, of the constitution.

## III. Substantive Due Process

John Taylor next contends that the City's gun control ordinance denies him due process. We cannot agree with Taylor's contention. In *Kalodimos*, the Illinois Supreme Court held that the right to bear arms under article I, section 22, of the Illinois Constitution was not a fundamental right. *Kalodimos*, 103 Ill. 2d at 509. Consequently, the court concluded that the relevant test to be applied in its due process analysis of the village's ordinance was the rational basis test and not strict scrutiny. The court ultimately held that the village ordinance met the criteria of the rational basis test since the ordinance was rationally related to the village's interest in reducing firearm-related deaths and injuries. In this regard, the *Kalodimos* court stated:

> "[A] ban on handguns under the conditions set forth in the ordinance could rationally have been viewed by the village as a way of reducing the frequency of premeditated violent attacks as well as unplanned criminal shootings in the heat of passion or in overreaction to fears of assault, accidental shootings by children or by adults who are unaware that a handgun is loaded, or suicides." *Kalodimos*, 103 Ill. 2d at 510.

Under the rational basis test, this court must determine whether the City's ordinance is rationally related to a legitimate governmental interest. A rational relationship exists between legislation and a legitimate governmental interest if the legislation tends to prevent some offense or evil or if it tends to preserve the public health, morals, safety and welfare to some degree. *Town of Normal v. Seven Kegs*, 234 Ill. App. 3d 715, 720, 599 N.E.2d 1384 (1992). If the law bears a reasonable relationship to a proper legislative purpose and is neither arbitrary nor discriminatory, then the requirements of due process are met and the courts will not substitute their judgment for that of the legislature. *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 454, 389 N.E.2d 529 (1979). If there is any conceivable basis for find-

ing a rational relationship, the law in question will be upheld. *People v. Windsor*, 242 Ill. App. 3d 1030, 611 N.E.2d 596 (1993).

Based on the holding in *Kalodimos*, it cannot be disputed that the regulation of firearms possession is a legitimate governmental interest. In the present case, the City's gun control ordinance is supported on the same rational basis as the gun control ordinance that survived constitutional scrutiny in *Kalodimos*. For example, in *Hunt v. Daley*, 286 Ill. App. 3d 766, 677 N.E.2d 456 (1997), the court relied upon the holding in *Kalodimos* to support its decision that a registration provision in the City of Chicago gun control ordinance survived constitutional scrutiny under the rational basis test. The provision at issue in *Hunt* rendered a previously grandfathered firearm unregisterable and subject to forfeiture if it was not reregistered every two years. *Hunt*, 286 Ill. App. 3d at 771-72. The court, relying on the holding in *Kalodimos*, rejected the plaintiff's argument that the ordinance's registration provision violated his substantive due process rights.

The *Hunt* court determined that the ordinance at issue—whose overall purpose as reflected in its preamble was virtually identical to the public policy purposes found in the preamble to the ordinance in *Kalodimos*—was constitutionally valid under the rational basis test because it was rationally related to the City's interest in reducing firearm-related deaths and injuries. *Hunt*, 286 Ill. App. 3d at 773-74. The court also determined that the ordinance's registration provision was constitutionally valid under the rational basis test because the provision could be viewed as being rationally related to the City's interest in measuring the relationship between handgun possession and crime, cataloging handgun ownership in order to track handgun theft as well as lawful transfers, and more readily associating a handgun with its owner's current address. *Hunt*, 286 Ill. App. 3d at 774.

■ In the instant case, as in *Kalodimos* and *Hunt*, the City's ordinance and its registration provision (Chicago Municipal Code § 8—20—040 (1999)) and confiscation-and-destruction provision (Chicago Municipal Code § 8—20—220 (1999)) are constitutionally valid under the rational basis test because they are rationally related to the City's legitimate governmental interest in reducing crime and firearm-related deaths and injuries by allowing the City to destroy unregistered and unregisterable firearms and encouraging law-abiding firearms owners to register their weapons.

John Taylor also contends that the City's ordinance has no rational basis because a nonresident's unregistered firearm could be subject to confiscation and destruction if it was stolen and then brought into the City of Chicago without the owner's involvement or knowledge. First,

we note that Taylor's stolen-gun hypothetical has no bearing on our determination as to whether the City's ordinance is constitutional under the facts of this case since the possibility that a law might be held unconstitutional under some conceivable set of circumstances is insufficient to render the law unconstitutional. See *In re C.E.*, 161 Ill. 2d 200, 641 N.E.2d 345 (1994).

Second, forfeiture laws can be constitutionally applied to an innocent owner's interest in his or her property if the owner lends the property to someone else who then uses that property unlawfully. For example, in *People v. Jaudon*, 307 Ill. App. 3d 427, 718 N.E.2d 647 (1999), this court held that a City of Chicago ordinance that provided for the impoundment of vehicles in which illegal firearms are found did not violate the substantive due process rights of innocent owners who did not know that their vehicles would be used for illegal purposes since the ordinance was rationally related to the city's legitimate governmental interest in regulating firearms possession and transportation. The *Jaudon* court reasoned that the ordinance was rational even as applied to innocent vehicle owners since its application could " 'have the desirable effect of inducing [innocent owners] to exercise greater care in transferring possession of their property.' " *Jaudon*, 307 Ill. App. 3d at 436, quoting *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 688, 40 L. Ed. 2d 452, 471, 94 S. Ct. 2080, 2094 (1974).

In the present case, John Taylor voluntarily gave his shotgun to his son knowing that his son would take the firearm to his home in Chicago. Under these circumstances, Taylor should have exercised care and made sure that the shotgun was properly registered in Chicago before transferring the shotgun to his son. When Taylor entrusted his shotgun to his son, who then possessed it unlawfully, the unregistered shotgun became subject to the forfeiture sanction found in the City's ordinance.

In addition, once John Taylor's unregistered shotgun came into the City of Chicago, it became contraband *per se* and subject to the confiscation and destruction provision of the City's ordinance. In *Kromeich v. City of Chicago*, 258 Ill. App. 3d 606, 630 N.E.2d 913 (1994), this court held that a firearm possessed within the City of Chicago, in violation of the municipal firearms registration ordinance, is contraband *per se* subject to forfeiture. The court, relying on the holding in *People v. Ziomek*, 179 Ill. App. 3d 303, 534 N.E.2d 538 (1989), explained the differences between derivative contraband and contraband *per se*, noting that contraband *per se* consisted of property for which possession alone constituted a criminal offense. The *Kromeich* court went on to state that contraband *per se* need not be

returned to the owner, even if it was improperly seized, since the mere existence of the property presents a danger. *Kromeich*, 258 Ill. App. 3d at 611-12. The court, citing to *Ziomek*, stated:

> " 'With contraband *per se*, the legislature or municipality seeks to protect society and potential victims of nonaccidental and accidental deaths and injuries resulting from the easy access to, and improper storage and use of, weapons and ammunition. As long as the unregistered gun is not seized, the danger remains. The law of that jurisdiction seeks to remove all unregistered guns from society, not merely a single unregistered gun.' [Citation.]" *Kromeich*, 258 Ill. App. 3d at 612-13.

Based on this court's decisions in *Kromeich* and *Ziomek*, the shotgun's status as contraband *per se* dictates that it be destroyed. John Taylor's innocence has no bearing on the shotgun's status as contraband *per se* because the focus of forfeiture of contraband *per se* remains on the item that is banned. See *Kromeich*, 258 Ill. App. 3d at 612, quoting *Ziomek*, 179 Ill. App. 3d at 309-10 (stating that with contraband *per se* the " 'focus changes from the manner in which the property was used by some individual, to the very nature of the property itself' ").

This court's decisions in *Kromeich* and *Ziomek* making unregistered firearms contraband *per se* make sense, for if Chicago residents were allowed to lawfully possess unregistered firearms merely because they received the firearms from nonresident gun owners, then the registration requirement would be virtually useless.

IV. The Ordinance's Effect on Nonresident Firearms Owners

■ John Taylor next contends that the ordinance adversely affects a nonresident hunter's ability to travel through Chicago with hunting firearms that have not been registered with the City of Chicago. We must disagree. The City's gun control ordinance contains a provision that specifically pertains to nonresident firearms owners. Section 8—20—040(b)(5) of the Chicago Municipal Code provides that the registration requirement shall not apply to:

> "Any nonresident of the [C]ity of Chicago participating in any lawful recreational firearm-related activity in the [C]ity, or on his way to or from such activity in another jurisdiction; provided, that such weapon shall be unloaded and securely wrapped and that his possession or control of such firearm is lawful in the jurisdiction in which he resides[.]" Chicago Municipal Code § 8—20—040(b)(5) (1999).

The exemption in section 8—20—040(b)(5) does not apply in this case because when Dane Taylor, a Chicago resident, possessed the shotgun he was not en route to or from any lawful recreational

firearm-related activity but was rather storing the unregistered shotgun in his Chicago home.

## V. Definition of "Antique" as Used in the City's Ordinance

■ The City's gun control ordinance exempts antique firearms from its registration requirements. Chicago Municipal Code § 8—20—030(f)(1) (1999). However, John Taylor's shotgun is not considered an antique firearm as that term is defined in the City's ordinance because the shotgun is still operable and capable of using commercially available ammunition. Consequently, Taylor contends that the ordinance's definition of antique firearms is arbitrary and capricious. We must reject Taylor's contention. In *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 316 Ill. App. 3d 227, 242, 738 N.E.2d 938 (2000), the court defined the term "arbitrary" as: "without fair or substantial reason," and the term "capricious" as: "unpredictable." Based on these definitions, the ordinance's definition of antique firearms is neither arbitrary nor capricious. First, the ordinance's definition of antique firearms is reasonable in light of the City's efforts to encourage firearms owners to register a firearm that is operable and capable of using commercially available ammunition, regardless of the weapon's age. Second, the ordinance's definition of antique firearms is not unpredictable, since it applies to all firearms that are operable and capable of using commercially available ammunition. Chicago Municipal Code §§ 8—20—030(a), (b) (1999).

This court believes that the definition of antique firearms as used in the City's ordinance should be given effect as written and that Taylor's complaint in this regard is better addressed to the Chicago city council.

## VI. Filing Time

■ Finally, John Taylor asserts that the City fails to cite any authority regarding the amount of time an individual can possess an unregistered firearm in the City of Chicago before it has to be registered. The law is crystal clear on this issue. Section 8—20—090(a) of the Chicago Municipal Code provides:

> "A registration certificate shall be obtained prior to any person taking possession of a firearm from any source." Chicago Municipal Code § 8—20—090(a) (1999).

Therefore, before Dane Taylor could lawfully bring his father's shotgun into the City of Chicago, he was required to register the weapon.

Accordingly, for the foregoing reasons, we reverse the trial court's order directing the City to release the shotgun.

Reversed.

CERDA and WOLFSON, JJ., concur.